## Shaver *et al. versus* McCarthy.

1. All that is required in order to make out testamentary capacity is that the alleged testator has mind and memory sufficiently sound to dispose of his estate with judgment and discretion. He must have a knowledge of the act he is engaged in, the property he is possessed of, and the disposition he intends to make of it.

2. A witness to the testamentary capacity of a testator is competent to state his opinion if he gives the facts upon which it is founded.

3. A witness (not an expert) who testifies to an opinion adverse to the capacity of a testator, must state the particular facts upon which his opinion is based. If however the facts, thus testified to, do not tend to show want of testamentary capacity, the court may refuse to hear the opinion of such witness.

4. It is error for a court to charge the jury that, if they believe the testimony of one witness, who had peculiar facilities for knowing the mental capacity of the testator, they must find for the will, when there are other material facts and circumstances and opinions of other witnesses in evidence on the question of testator's capacity. The evidence should be submitted to the jury as a connected whole.

May 29th, 1885. Before MERCUR, C. J., GORDON, TRUN-KEY, STERRETT, GREEN and CLARK, JJ. PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Huntingdon county :* Of January Term 1884, No. 247.

This was an issue certified to the said court by the Orphans' court of said county to try (1) whether a certain writing, dated December 6th, 1881, was the last will of Peter Shaver, deceased, and (2) whether the said Peter Shaver was, at the time of signing said paper, of sound and disposing mind. In this issue A. R. McCarthy, who was named as executor in the alleged will, was plaintiff and Jacob K. Shaver and others, contestants, were defendants.

On the trial, before HOY, P. J., plaintiff called W. A. Hunter and George W. Lukens, the subscribing witnesses, and they proved the due execution of the will and testified that at the time of signing the will Peter Shaver was of sound and disposing mind. Plaintiff then offered in evidence the alleged will. Defendants objected (1) because it was not proven, (2) because there were erasures and interlineations, that were not noted in the attestation nor explained by the subscribing witnesses. Objections overruled and will admitted in evidence. Exception. (Eighth assignment of error.)

Defendants offered to prove a conversation of the widow of decedent in which she said that he was not fit to attend to business and that he talked of turning it over to other persons; also conversations in which she said that Peter Shaver was not fit to make a will. Objected to by plaintiff. Objections sustained. Exceptions. (Assignments of error eleven to thirteen inclusive.) Defendants further offered to prove by two of the beneficiaries under the will, declarations of parties that Peter Shaver was of unsound mind at the time of making the will. Objected to by plaintiff on the ground that declarations of legatees will not be received in evidence against their colegatees. Objection sustained and evidence excluded. Exception. (Twenty-fourth assignment of error.)

After Hurtzman, a witness called by defendants, had testified that he had known decedent for some years and that on one occasion in the spring before his death he did not seem to recognize witness when he spoke to him, counsel for defendants proposed *to* ask witness what conclusion he drew from Shaver's conduct on that occasion as to the state of his mind. Objected to by plaintiff. Objection sustained and question excluded. (Fourteenth assignment of error.)

The other evidence to prove decedent's unsoundness of mind was that he sometimes acted foolishly and did not know where he was, that he sometimes failed to recognize his acquaintances, that he was childish and acted foolishly at the table,

that he was blasphemous and at times was improperly clothed. No witness however testified to his making a bad bargain or that he had squandered any money.

Plaintiff called in rebuttal some seven witnesses, all of whom testified to having had business relations with Shaver, and when asked as to their opinion of Shaver's capacity to make a will, defendants objected. Objections overruled and evidence admitted. Exceptions. (Assignments of error fifteen to nineteen inclusive and twenty-one.)

H. E. Shaffer, the attorney who drew the will, produced a number of receipts and business transactions showing Shaver's capacity for business, and testified that he was competent to make a will.

It appeared that when the will was written decedent's son, Derrick, was with him and received a larger legacy than any of the other children, and that on the morning of the death of Shaver, Derrick hastened to the office of the Register of Wills and had the will probated within a few hours after the death of his father. From these facts defendants requested the court to charge that there was a conspiracy to get up this will. This was refused, the court saying: "There must be some evidence of a conspiracy before it can be asked to say that it is proved. It is a serious charge to make against a reputable citizen. That there was a conspiracy in this case we do not know. But it is plain that Dr. McCarthy was made plaintiff by the court. He is not bound to contest this will if he does not choose to do so, but the court has made him party plaintiff in this issue, because he was the executor named in the will. There is nothing about his appearance that would strike a stranger to him, with the idea that he was a man of bad character and capable of entering into a conspiracy. If his testimony is to believed he had nothing to do with the making of the will at all. In his testimony he stated that Peter Shaver had frequently spoken to him about making a will and asked him to write it, and he gave his reasons why he finally declined to do so; that he intended to write his will or had agreed to write it, but before he had done so, certain things occurred, and according to his own testimony he declined after these things had occurred, to write the will, and he so informed Peter Shaver. Now, if that evidence is to be believed, and there is no contradiction of it, that we recollect of, then he had nothing at all to do with the making of the will. The fact that he was made executor, would not of itself sustain the charge of conspiracy. It appears that he knew nothing of that until after the will was drawn up and executed, when he heard it from others. The charge that Dr. McCarthy entered into a conspiracy of so grave a character as this, seems to us

to be more than the evidence warrants, and we feel bound to say to you that no charge of conspiracy to defraud can be sustained on the evidence here presented on that point, and we instruct the jury to find against a conspiracy in this case. We would not permit a verdict convicting any one of conspiracy to stand on such evidence as is asked for a conviction of that crime in this case." (Eight assignment of error.)

The court charged, *inter alia,* as follows: "If H. E. Shaffer, who drew up this will, testified to the truth, then Peter Shaver the testator understood exactly what he was doing, and what property he had and what disposition he wished to make of his property, and he knew of all his children, because all his offspring,—his children and grandchildren are named in the will and all are given something. If the facts to which Mr. Shaffer testifies be true, of his counting up the value of certain property, summing up what it all would amount to, if he did this according to Mr. Shaffer's testimony, he knew exactly what he had and what disposition he desired to make of it. And if all the things to which Mr. H. E. Shaffer has testified be true, we say to you there can be no question about the testator, Peter Shaver, having sufficient testamentary capacity to make a will. Now, that is a fact for you to determine, whether he told the truth, or whether he told an untruth; did he testify truthfully or falsely, this you must determine from the evidence in the case. . . . .

"The defendants have called a large number of witnesses who have testified to facts which go to show that at times this man, Peter Shaver, acted with a great deal of levity and probably sometimes he acted indiscreetly, and it is in testimony that he was an erratic and peculiar man, in his ways and habits, and the witnesses from these facts have given it as their opinion on the part of the defendants that he was not capable of making a will. One or two of the most intelligent witnesses, as it struck us, when the question was put to them, would not say that he was crazy, but gave it as their opinion that he was not capable of making a will.

"The opinions of these witnesses are of very little account. You are to form your own opinions on the subject, you are to consider the facts upon which they base their opinions and which they have detailed in your hearing. In the expression of the Supreme Court, where it states, if he has a full and intelligent knowledge of the act that he is engaged in, then he is competent to make a will. If we understand the doctrine as laid down by Judge TRUNKEY in that portion of the opinion which we read in your hearing, then the testimony of at least these two of defendants' witnesses, who would not testify that he was crazy, amounts to nothing, their opinion that he

was not competent to make a will amounts to nothing, because if they had had sufficient facts to convince them that he was crazy they would have so testified no doubt, and it then would have been evidence for you to have considered in determining whether or not he was crazy. But if you believe that he was crazy, that from any cause he was enfeebled in mind, that he did not know what he was doing on the 6th day of December, 1881, when he made this will, then of course you must find against the plaintiff and against the will, and in favor of the defendants. But do the facts which they have given in evidence so satisfy you, gentlemen of the jury,—do they satisfy you that this man was crazy? Now it strikes us, and the Supreme Court has said in a number of cases, that in all cases where a question of law arises it is the duty of the court to instruct the jury on such points and the jury are bound by such instructions, and that the court can also express their opinion as to the facts proved in the case without it being binding upon the jury, that is, what the court says to you is the law is binding upon you, but what he says about the facts proved in the case is not, and what we now say to you as to the facts proved in this case, we do not mean shall be binding upon you, if you do not agree with us on this point. We say to you, gentlemen of the jury, that after hearing all of the evidence adduced on the part of the defendants going to show that Peter Shaver, the testator named in this will, was of such an unsound mind as to make him incapable in law of making a will, in our opinion, but it is for you to find from them all the evidence, is not sufficient to set aside this will. It does not come up to the requirements of the law; there is no failure of memory proven,—there is not a single act proven that shows that he was actually crazy."

The exceptions to this charge formed the first seven and the ninth assignments of error.

Verdict for the plaintiff and judgment thereon.

Defendants took this writ assigning for error the various exceptions above noted.

*William H. Woods*, and *R. Bruce Petrikin*, for plaintiffs in error.—The court directed the jury to disregard the evidence of a number of witnesses because they would not pronounce the testator " crazy." This was clear error: Bitner *v.* Bitner, 15 P. F. S., 347; Wogan *v.* Small, 11 S. & R., 143 ; Rambler *v.* Tryon, 7 S. & R., 92; Wilkinson *v.* Pearson, 11 Harris, 119; Titlow *v.* Titlow, 4 P. F. S., 223 ; Bricker *v.* Lightner's Ex'r, 4 Wr., 205; 1 Jarman on Wills, 115, 119, 120, in note; Dickinson *v.* Dickinson, 11 P. F. S., 404.

The issue was not framed to determine whether Peter

[Shaver *v.* McCarthy.]

Shaver was crazy; and it was not necessary for us to show even *derangement* in order to set aside the will. Imbecility of mind, short of insanity, is sufficient for that purpose: Mc-Taggart *v.* Thompson, 2 Harris, 149; Rambler *v.* Tryon, 7 S. & R., 90; 1 Jar. on Wills, *90.

It was error in the court to put the whole case on the testimony of one witness.

*R. Milton Speer* (*H. E. Shaffer* with him), for defendant in error.—The court gave the jury correct and full instructions as to what constitutes mental capacity, and it is impossible that, under the whole charge, they could be or were misled. His Honor read at length from the able opinion of Judge TRUNKEY, in Wilson *v.* Mitchell, 5 Out., 495. This court will hardly reverse for a literal reading of its own language.

The court told the jury that the opinions of the witnesses were of very little account and that they must consider the facts on which the opinions were based. There was no error in this: Browne *v.* Molliston, 3 Wharton, 129; Bank *v.* Wirebach's Ex'r, 12 W. N. C., 150; Will of Thomas Woodfall, 7 Phila., 528.

The presumption is in favor of sanity and the burden is upon those impeaching a will to prove unsoundness of mind: Egbert *v.* Egbert, 28 P. F. S., 326.

Mr. Justice CLARK delivered the opinion of the court, October 5th, 1885.

In the introductory part of the charge, the learned judge without doubt fully and fairly presented the precise questions, which were for the consideration of the jury, stating with clearness and accuracy the principles of law which should govern in their determination. He quoted at length from the opinion of this court in the very recent case of Wilson *v.* Mitchell, 5 Out., 495, which unquestionably contains a concise and correct exposition of the law of this state upon the questions involved in part, as follows: "A man of sound mind and disposing memory is one who has a full and intelligent knowledge of the act he is engaged in, a full knowledge of the property he possesses, an intelligent perception and understanding of the disposition he desires to make of it, and of the persons and objects he desires shall be the recipients of his bounty. It is not necessary that he collect all these in one review. If he understands in detail all that he is about, and chooses with understanding and reason between one disposition and another, it is sufficient for the making of a will: Daniel *v.* Daniel, 39 Pa. St., 191; Tawney *v.* Long, 76 Id., 106. If from any cause he is so enfeebled in mind as to be

incapable of knowing the property he possesses, of appreciating the effect of any disposition made by him of it, and of understanding to whom he intends to bequeath it, he is without the requisite testamentary capacity: Leech v. Leech, 21 Id., 67."

No one can doubt the entire accuracy of this instruction. In the application of the law, as thus declared, to the particular facts of the case under consideration, however, the learned judge was, we think, most unfortunate. He says: "One or two of the most intelligent witnesses, as it struck us, when the question was put to them, would not say that he was *crazy*, but gave it as their opinion that he was not capable of making a will." . . . . . "If we understand the doctrine as laid down by Judge TRUNKEY in that portion of the opinion which we read in your hearing, then the testimony of at least these two of defendants' witnesses who would not testify that he was *crazy* amounts to nothing; their opinion that he was not competent to make a will amounts to nothing because, if they had had sufficient facts to convince them that he was *crazy* they would have so testified, no doubt, and it then would have been evidence for you to have considered in determining whether or not he was *crazy*. But, if you believe that he was *crazy*, that from any cause he was enfeebled in mind that he did not know what he was doing on the 6th day of December, 1881, when he made this will, then of course you must find against the plaintiff and against the will and in favor of the defendants. But do the facts which they have given in evidence so satisfy you, gentlemen of the jury—do they satisfy you that this man was *crazy*?"

In an issue *devisavit vel non*, no question is raised as to whether or not the testator is crazy, the precise question for determination is whether or not his mind and memory were sufficiently sound to enable him to know and to understand the business in which he was engaged at the time when he executed the will; yet the learned judge says that the opinion of the witnesses, that he was not competent to make a will, amounts to nothing for, if the facts had been sufficient to convince them that he was crazy, they would have so testified; "and that would have been evidence for the jury in determining whether or not the testator was crazy." The word "crazy" in its popular sense imports a broken, shattered or deranged mind rather than one enfeebled by age or disease. But, whilst testamentary incapacity may result either from mental derangement accompanied by delusion or from mental imbecility, neither or both of these states or conditions of the mind are the exact equivalent of what is called testamentary incapacity; for the existence of delusion on one subject is not

inconsistent with sufficient soundness of mind on another (Bitner *v.* Bitner, 65 Pa. St., 347; O'Neil *v.* Evans, 1 Am. L. J., 522), and mere feebleness of intellect is insufficient to avoid a will: Daniel *v.* Daniel, 39 Pa. St., 191.   From whatever cause the alleged incapacity may be supposed to arise, if the testator has mind and memory sufficiently sound to dispose of his estate with judgment and discretion, the disposition is valid; all that can be required in any case is that the strength of the mind shall be equal to the purpose to which it is applied.

Similar in some respects to this was the case of McTaggart *v.* Thompson, 2 Harris, 149, where Mr. Justice ROGERS says: "From the remarks made by the court the jury were induced to believe that, unless they found the testator, in the language of the judge, 'crazy,' he had the requisite capacity to make a valid will.   But it is not requisite that such derangement of intellect should be proved to authorize the jury to set aside the will.   Imbecility of intellect, though short of insanity, has been held sufficient for that purpose.   This is a principle too plain to need the aid of authority."

The rule is well settled that, on a question of testamentary capacity, the opinions of witnesses, when they state facts as the ground of their opinions, are competent evidence, and are entitled to the consideration of the jury: Dickinson *v.* Dickinson, 11 P. F. S., 404.   "What is mental competency (Bricker *v.* Lightner's Ex'r, 4 Wr., 205) to make a contract or will, or to deliver truthful testimony, is a question which must forever depend very greatly upon the opinions of those who have had opportunities for observing the conduct of the party and the development of the intellectual faculties.   Facts and circumstances are to be sworn to as the groundwork of the opinions offered, and as affording tests of the soundness of the opinions; but opinions, the results of observed facts, are never excluded in such cases.   It is the highest and most direct evidence the nature of the question can afford."

The charge is, without doubt, fairly open to the criticism that it was misleading; in part it is undoubtedly correct, and in part, on the same question, it is as clearly wrong; as a whole it is inconsistent and incongruous, and we are not to suppose that a jury would be able, with proper discrimination, to follow that portion which was correct, and to discard that which was erroneous.

It is the duty of the court to determine the sufficiency of the evidence, and it is error, if the point is made, to submit the question of testamentary capacity to a jury unless it be sufficient: Cauffman *v.* Long, 1 Norris, 72.   Insufficient evidence is regarded as no evidence at all; if there be evidence, however, from which the fact may be fairly inferred, it is

[Shaver *v.* McCarthy.]

sufficient to send the case to the jury, no difference how strong and persuasive may be the countervailing proof; the conflict in the evidence, the contrariety of the opinions expressed, and the veracity of the witnesses, are matters peculiarly within the province of the jury, and with which the court has nothing to do. The evidence on part of the defendants in this case was, we think, sufficient to justify the submission; no question would appear to have been made as to that in the trial below, and that the court took this view of the case is apparent from the fact that the cause was submitted. But, although the case was submitted to the jury, the opinion of the court upon the evidence was so strongly expressed as to be equivalent to a binding instruction. "We say to you, gentlemen of the jury," says the court, "that, after hearing all of the evidence adduced on the part of the defendants going to show that Peter Shaver, the testator named in this will, was of such an unsound mind as to make him incapable in law of making a will, in our opinion, but it is for you to find from all the evidence, is not sufficient to set aside this will. It does not come up to the requirements of the law; there is no failure of memory proven—there is not a single act proven that shows that he was actually crazy." Strong expressions of opinions by the court upon the evidence are sometimes tolerated, but they should be in such form as not to mislead, or to withdraw the consideration of the question from the jury.

The testimony of the subscribing witnesses to a will is, of course, entitled to great respect; in the absence of countervailing proof, it is decisive; but the court should not hinge the cause upon the testimony or opinion of a single witness, although a subscribing witness, if there are other material facts and circumstances, and opinions of other witnesses in evidence, bearing upon the question of the testator's capacity. To say that the case depends upon the truth or falsity of the evidence of a single witness, although he may have possessed extraordinary facilities for judging, is to give too much prominence to a part of the case only; the evidence should be submitted to the jury as a connected whole: McTaggart *v.* Thompson, 14 Penn. St., 149; Irish *v.* Smith, 8 S. & R., 581; Rambler *v.* Tryon, 7 S. & R., 92.

What has been said, in a general way, covers the matters embraced in the first seven and the ninth assignments of error, and, for the reasons indicated we are of opinion that the judgment must be reversed. The remaining assignments are, we think, without merit, and we will but briefly refer to them.

8. Certainly there was no sufficient evidence of the existence of any conspiracy on the part of Dr. McCarthy, H. E. Shaffer and others in the making of this will; there was an indelicate,

perhaps an indecent, haste attending its probate, but there is no ground for the charge of conspiracy.

10. The will was properly received in evidence: Wikoff's Appeal, 15 Penn. St., 281; Rees, Adm'r *v.* Stille, 38 Penn. St., 138.

11, 12, 13, 24. The interests of legatees and devisees under a will are not joint but several, and hence the declarations of one cannot be given in evidence to affect or prejudice the others: Clark *v.* Morrison, 1 Casey, 453; Irwin *v.* West, 32 P. F. S., 157.

14, 15, 16, 17, 18, 19, 21. William Hurtzman testified to nothing upon which an opinion could be formed by any one. In the spring of 1881, and again in the fall of the same year, Hurtzman says, as he was passing along the public road to Mt. Union, he saw the testator standing on the roadside. He seemed to be in a study, and when spoken to did not reply. "It seemed," says the witness, "as though he did not recognize or know that I passed by." Was there anything in this incident which tended to show want of testamentary capacity, or from which any man, expert or otherwise, could by any possibility form any intelligent opinion as to the soundness or unsoundness of Peter Shaver's mind? We think not. As we have already said, facts and circumstances must furnish the ground of the opinion expressed; whether they are relevant and pertinent for the purpose is a question for the determination of the court, as in other cases, and the jury must primarily rely upon these facts and circumstances as affording a test of the soundness of the opinion given. On the contrary, however, we think the facts detailed by Bucher, Eberbrun, James D. and George Quarry, Messimore and Bathurst were such as justified the expression of an opinion. They related to transactions involving, to some degree at least, the exercise of judgment and a knowledge of business. They did not furnish perhaps any very strong instance or illustration of mental vigor on part of the testator, but their tendency was plainly in that direction; the testimony was therefore admissible.

20. It was clearly within the discretionary power of the court to allow the recall of William Shaver for further cross-examination; especially as it was alleged to be upon a matter which had been embraced in his previous examination, but was omitted by the reporter.

The 22d and 23d assignments are wholly without merit.

The judgment is reversed, and a *venire facias de novo* awarded.