IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

## WESTERN DISTRICT—PITTSBURGH, 1891.

## COMMONWEALTH v. FRANK GERADE.

APPEAL BY DEFENDANT FROM THE COURT OF OYER AND
TERMINER OF ALLEGHENY COUNTY.

Argued January 5, 1891*—Decided May 27, 1891.

1. Although, on the trial of an indictment, the burden is on the common-
wealth, without shifting, to prove, not only to the satisfaction of the jury
but beyond a reasonable doubt, the presence of every ingredient neces-
sary to constitute the crime charged, yet there are presumptions of fact
which will stand for full proof until the contrary is shown.
2. Inasmuch as sanity is the normal condition of man, every one is pre-
sumed to be sane; and that presumption will serve the commonwealth
as the full equivalent of express proof, until it is successfully rebutted
by the defendant by fairly preponderating evidence that he was insane
at the time of committing the crime alleged against him.†
3. With this burden of proof upon the defendant, evidence which creates
only a mere doubt, or a reasonable doubt of his sanity, is insufficient to
justify an acquittal; the jury must be satisfied by fairly preponderating
evidence; but it is error to instruct that the fact of insanity when the
crime was committed must be clearly proved.

---

\* By advancement in the Eastern District.

† See Ortwein v. Commonwealth, 76 Pa. 421. The rule as to the burden
of proof, where insanity is set up as a defence, is different in some other
states: See State v. Crawford, 14 Am. L. Reg., N. S., 21 and note.

Statement of Facts.

4. Such instruction is reversible error, especially in a capital case, even though in another part of the charge the trial judge gave substantially correct instructions as to the measure of proof required. In such a case, it is enough to know that the jury may have been misled by the erroneous instruction on a point vital to the defence set up.

5. Where witnesses have testified to facts affording an opportunity to them to acquire a knowledge of the mental condition of the defendant, at or near the time of the commission of the crime charged, and afterward, it is error to refuse offers to prove by them their opinions whether the defendant was sane or insane at that time, and so remained.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 13 October Term 1891, Sup. Ct.; court below, No. 19 June Term 1890, O. and T.

On June 20, 1890, the grand jury returned as a true bill an indictment, based upon the return of a coroner's inquest, charging Frank Gerade with the murder of Annie Hofer.

On September 25, 1890, the prisoner was arraigned, and pleaded; whereupon it was shown, in substance, that on the morning of March 15, 1890, William Gerade, a brother of the defendant, living a square or more distant, was awakened by the defendant's wife, in her bare feet and night-dress, who said " Come, come! Blood, blood!" The sleeves and bosom of the wife's night-dress were bloody. William Gerade and another brother went to the defendant's house and found it locked; but, looking down through a cellar window, they saw a lamp without a chimney standing on a box and dimly burning, and the defendant seated on the box or leaning against it, with a lot of knives and forks passing from one hand to the other. Procuring the aid of a policeman, the party entered the dwelling to the family bedroom on the first floor. The room contained two beds and a small crib. In one of the beds were two little children asleep. On the floor, near the crib, lay the lifeless body of Annie Hofer, a step-child of the defendant aged about eight years, who to all appearances had been killed by dashing her head against the crib, one side or 'end of the crib being broken. There was blood on the crib and on the wall. Passing down to the cellar, the defendant was found in a sitting position, with the knives and forks in his hands. There was blood on his shirt sleeves and on his forehead. When spoken to, he stared wildly, and

gave up the knives and forks without speaking.   He was then placed under arrest.   The prisoner's wife, also, was arrested; but she was subsequently released and sent to the insane department of the poor farm, where she remained.

In the defendant's case, various offers were made to show, in substance, that his wife had been committed to the insane department of the city home on November 3, 1887, had been released but a short time before, and was insane at the time of the commission of the offence charged in the indictment, as furnishing one ground in support of the alleged insanity of the defendant.   Objections being made, the offers were overruled.[2 to 5]

James Shipman, called for the defendant, testified that he had known the defendant for four or five years, saw him in a paint shop three or four days before the murder, and then heard him conversing with a man in the shop, "about something being wrong with the books, and one thing and another. . . . . To me the conversation appeared like some man that didn't know what he was talking about; that is only my opinion."

"Q. Was his manner on that occasion different from what it had been?"

Objected to, by the commonwealth.

By the court: Let him tell the actions of the man, if he can.

Mr. Dicken: The defendant proposes to prove by the witness on the stand, that the manner which has been described by the witness, his conduct and language, were wholly different from what he had known of him previously.

Objected to, by the commonwealth, as incompetent, irrelevant and immaterial.

By the court: Objection sustained; exception.[6]

Dr. George T. McCord, called for the prisoner, testified that he was a physician and surgeon of thirteen years practice, and had come in contact with a great number of cases of insanity in his general practice, but had not devoted any special attention to insanity; that he was not acquainted with the defendant, more than having met him in the capacity of an examiner; that in June or July last he had made a special examination of him, for the purpose of ascertaining his condition mentally:

"Q. I am going to repeat a question that has been overruled once; but I am going to repeat it again.   As an expert, will

Statement of Facts.

you please state whether, as a result of your examination of this man, he was sane or insane at that time? Objected to.

By the court: Objection sustained; exception.[8]

"Q. Will you please state what examination you made of this man, and describe his symptoms, his behavior, everything necessary to make up an opinion; and then give us your opinion at the end? A. Dr. Chessrown accompanied me to the cell. The cell door was opened by the rangeman; I passed into the cell and spoke to the man. He glared at me in a wild manner and walked off to a far corner of his cell, and there half crouched in the corner, he turned his head around sidewise, and looked at me in a glaring, contemptuous manner. I spoke to him kindly and he refused to answer me. I told him I was a physician and wanted to know whether he was sick or not, in order to treat him. He scowled at me and refused to answer, and during the entire examination of him I never got a word from him. From his manner, his conduct, and his personal appearance, I readily decided that the man was crazy. Q. Did you see him afterwards; did you see him again? A. Yes, sir; I examined him yesterday afternoon, in his cell. Q. At what time afterwards? A. In the afternoon, after court adjourned here. I think it was probably five o'clock. Q. Of the same day? A. Yesterday."

Testimony at this distance from the commission of the alleged crime objected to by the district attorney.

By the court: Objection sustained; exception.[9]

Dr. Samuel Ayers, called for the prisoner, testified that he was a physician and surgeon of about fourteen years' practice, and had had occasion to become acquainted with cases of insanity; that he was a resident physician at Dixmont asylum for about five years, and recently had charge of the insane department of the city home for four years; that he had seen the prisoner the day before he testified, and also about three months before; that in May or June, in the county jail, he had made an examination of him, with the view of ascertaining his mental condition.

"Q. What was the result of that examination, doctor? A. It was my opinion that he was of insane mind. Q. And your recent examination, has it changed that opinion? Objected to.

Charge of Court below.

By the court: Objection sustained; exception.[10]

At the close of the case on the testimony, the court, MAGEE, J., charged the jury in part as follows:

I will now take up the points presented by counsel for defendant, and answer them. You will find that the court, in the preparation of its charge, has anticipated, to some degree at least, the points presented as the subject of its consideration. The defendant, by his counsel, asks the court to charge the jury as follows:

1. That the burden of proof never shifts from the commonwealth to the defendant; and the commonwealth must show, beyond a reasonable doubt, that the defendant was of sound mind, memory and discretion at the time of the killing.

Answer. This point is refused. As I understand the point, it is intended to say that the defence of insanity shall be established beyond a reasonable doubt; that unless it is established beyond a reasonable doubt, it would be your duty to acquit. I do not understand the law to go to that extent, and the matter will be referred to in my general charge, wherein the law, as I understand it, is correctly stated on this subject.[13]

2. That if, at any stage of the trial, by the evidence a reasonable doubt of this condition of the defendant arises, it is the duty of the jury to acquit.

Answer: This point is refused. Substantially it is the same point; that is, if insanity is the ground of defence you must be satisfied beyond a reasonable doubt of its existence; that is not, as I said in reference to the first point, the law as I understand it.[14]

3. If the jury be satisfied by the evidence that at the time of the killing the defendant was insane, that he was under the control of a resistless, homicidal impulse that led to the commission of the act, then their verdict should be, " By reason of insanity, not guilty."

Answer: As counsel for defendant have already informed me that this point is intended to involve the same question as the two preceding points, it is refused for the reasons given above.[15]

4. That if, on any material matter involved in the issue, the jury entertains a doubt, they should acquit.

Answer: This point is affirmed, and we refer you to the subject in our general charge of what a reasonable doubt is, and to what it is applicable.[16]

5. That one of the essential characteristics of murder being that defendant, at the time of killing, was of sound memory and discretion, if the jury has any reasonable doubt of this fact they ought to acquit.

Answer: This point is refused, as it embodies the same principle that is suggested in the first point, that is, that insanity has to be established beyond a reasonable doubt; whereas the law, as I understand it, is, that that being a defence, you are only required to determine that question of insanity by a preponderance of testimony.[17]

6. That under the plea of not guilty, the defendant has the right to show, by way of defence, the insanity of the defendant at the time of the killing, and that the jury must pass upon the question of defendant's sanity, or insanity, and if they find him insane at the time of the killing, acquit by reason of insanity.

Answer: This point is affirmed.

I have now answered the points presented by the counsel for the defendant, and now proceed with my general charge.

· The indictment which has been read in your hearing, and upon which the issue is joined, charges that Annie Hofer was murdered by the defendant, and contains another count for manslaughter. Under the indictment upon which this issue is joined, the prisoner at the bar may be acquitted of all crime ; he may be convicted of voluntary manslaughter; he may be convicted of murder of the second degree, or he may be convicted of murder of the first degree. So that it becomes necessary for the court to instruct you fully as to the law respecting the degrees of murder, as to the law of voluntary manslaughter, and as to the law of insanity, and this we will proceed to do. . . . .

The plea of insanity is a defence set up in this case. Wherever idiocy, or dementia, or general mania is shown to exist, the prisoner must be acquitted ; and it is enough if it be shown to have existed in reference to the particular act. At one time it was said that it had to be general insanity, applied to everything, insane on everything, but it was afterwards modified, in

that it is sufficient to be insane on the particular act that is charged as criminal. It is my duty to say to you, as the law governing the question of the responsibility of men for their acts, that, in all cases, every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary is proved to the satisfaction of the jury; and, to establish a defence on the ground of insanity, it must be clearly proved that at the time of committing the act, the party accused was laboring under such a defect of reason from disease of the mind, as not to know the nature of the act he was doing, or if he did know it, that he did not know he was doing what was wrong. That looks like a fair definition of what insanity is. That is what is required to relieve him of responsibility for his acts. . . . . .

—October 1, 1890, the jury returned a verdict finding the defendant guilty of murder of the first degree. On November 8th, a rule for a new trial being overruled, judgment was passed, when the defendant took this appeal, assigning for error, inter alia:

2–5. The refusal of the defendant's offers.[2 to 5]

6–10. The refusal of the defendant's offers.[6 to 10]

13–17. The answers to the defendant's points.[13 to 17]

*Mr. J. C. Dicken* and *Mr. W. D. Moore*, for the appellant.

*Mr. R. H. Johnston*, District Attorney, and *Mr. W. D. Porter*, for the Commonwealth.

OPINION, MR. JUSTICE STERRETT:

As stated in appellant's history of the case, "the defence upon which his counsel chiefly relied was insanity." In view of that fact, several points for charge, bearing more or less directly on the subject, were submitted. One of these is "that under the plea of not guilty, the defendant has a right to show, by way of defence, the insanity of the defendant at the time of the killing, and that the jury must pass upon the question of the defendant's sanity or insanity, and if they find him insane at the time of the killing, acquit him by reason of insanity." This point was rightly affirmed without any qualification, and, of course, it is not assigned for error. Other points

recited in the thirteenth, fourteenth, fifteenth and seventeenth specifications, respectively, were answered in the negative, and therein it is alleged there was error. In the first of these, the court was requested to charge: "That the burden of proof never shifts from the commonwealth to the defendant, and the commonwealth must show, beyond a reasonable doubt, that defendant was of sound mind, memory, and discretion at the time of the killing." The learned judge's answer was: "This point is refused. As I understand the point, it is intended to say that the defence of insanity shall be established beyond a reasonable doubt; that, unless it is established beyond a reasonable doubt, it would be your duty to acquit. I do not understand the law to go to that extent, and the matter will be referred to in my general charge, wherein the law, as I understand it, is correctly stated on this subject." If this answer was intended to be responsive to the point, its meaning is not very clear. The court was not requested to charge "that the defence of insanity shall be established beyond a reasonable doubt." On the contrary, the last clause of the point is, in substance, that the burden of proving, affirmatively and beyond a reasonable doubt, the sanity of the defendant at the time of the killing, was on the commonwealth. But, whatever impression this and other answers to the defendant's points may have made on the minds of the jury, it may be safely assumed that, in considering the evidence bearing on the defence of insanity, they were governed by what the learned judge afterwards· said in that portion of his general charge to which they were specially referred for a correct statement of the law on the subject. After speaking particularly of insanity as a defence, etc., he there said, inter alia: "It is my duty to say to you, as the law governing the responsibility of men for their acts, that, in all cases, every man is presumed to be sane and to possess a sufficient degree of reason to be responsible for his crimes, until the contrary is proved to the satisfaction of the jury; and, to establish a defence on the ground of insanity, it must be clearly proved that, at the time of committing the act, the party accused was laboring under such a defect of reason from disease of the mind as not to know the nature of the act he was doing, or, if he did know it, that he did not know he was doing what was wrong. This

looks like a fair definition of what insanity is. That is what is required to relieve him of responsibility for his acts."

Without questioning the general correctness of what was said, in that connection, as to the kind of insanity that constitutes a defence to an act, which would otherwise be punishable as criminal, we think the degree of proof necessary to sustain such a defence was too strongly stated in saying "it must be *clearly* proved." This was imposing on the defendant a greater burden than the law requires.

In harmony with the humane principle of the criminal law, that every person accused of crime shall be presumed innocent until his guilt is clearly established, it is incumbent on the commonwealth to prove, not only to the satisfaction of the jury but beyond a reasonable doubt, the presence of every ingredient necessary to constitute the crime charged in the indictment. That burden, as was said in Turner v. Commonwealth, 86 Pa. 54, never shifts, but rests on the prosecution throughout; so that, in all cases, a conviction can be had only after the jury has been convinced, beyond a reasonable doubt, of the defendant's guilt. It necessarily follows that, if the evidence is such as to leave a reasonable doubt in the minds of the jury as to the existence of any necessary ingredient of the crime charged, they should give the defendant the benefit of that doubt. But presumptions of fact sometimes stand for full and express proof until the contrary is shown. For example, inasmuch as sanity is the normal condition of man, every one is presumed to be sane, and that presumption holds good, and is the full equivalent of express proof, until it is successfully rebutted. When insanity of the defendant is set up as a defence, it is incumbent on him to rebut the ordinary presumption of sanity, and show, not beyond a reasonable doubt, nor either clearly or conclusively, but by fairly preponderating evidence, such as is ordinarily required to prove a fact in civil issues, that he was insane at the time of committing the alleged crime. In Lynch v. Commonwealth, 77 Pa. 205, 213, the trial judge refused to charge " that, if the jury have a reasonable doubt as to the condition of the defendant's mind at the time the act was done, he is entitled to the benefit of such doubt, and they cannot convict; " and, for further answer to the point, said : " The law of this state is that where the killing is admitted, and in-

sanity or want of legal responsibility is alleged as an excuse, it is the duty of the defendant to satisfy the jury that insanity actually existed at the time of the act; a mere doubt as to such insanity will not justify the jury in acquitting on that ground." That instruction was approved by this court, and substantially the same instruction was afterwards sanctioned in Ortwein v. Commonwealth, 76 Pa. 421, 425, and other cases. In Coyle v. Commonwealth, 100 Pa. 573, the same rule of evidence was again recognized. It was further held to be error, in that case, to instruct the jury that the defence of insanity should be proved by clearly preponderating evidence. The instruction should have been "fairly preponderating," instead of "clearly preponderating evidence." Speaking of the degree of proof required by the words employed in that case, Mr. Justice MER-CUR said: "It is demanding a higher degree of proof than the authorities require. It may be satisfactorily proved by evidence which fairly preponderates. To require it to clearly preponderate, is practically saying it must be proved beyond all doubt or uncertainty. Nothing less than this will make it clear to the jury." As applied to the degree of proof required to rebut the presumption of sanity, and sufficiently prove the existence of insanity, there is no appreciable difference between the expressions "clearly proved" and "proved by clearly preponderating evidence." If there is any difference, the former calls for the higher degree of proof. It is almost equivalent to saying "proved beyond a reasonable doubt;" because, if any doubt as to the existence of a particular fact exists, it cannot be said to be "clearly proved."

It is true that the learned judge, in another part of his somewhat lengthy charge, said to the jury: "You have to be satisfied of his insanity by the preponderance of the evidence. He has to establish, in other words, his insanity, not by the rule of a reasonable doubt, but by the testimony, what the preponderance of the evidence shows." But, with two measures of proof before them, one substantially correct and the other erroneous, how is it possible for us to determine which the jury adopted? There should be nothing left to conjecture, especially in a capital case. It is enough to know that the jury may have been misled by erroneous instructions on a point vital to the defence.

The testimony referred to in the sixth, eighth, ninth and tenth specifications appears to have been neither incompetent nor irrelevant, and we think it should have been admitted. Neither of the remaining specifications of error requires special notice. That part of the charge embraced in the eighteenth specification of error contains some expressions of opinion, etc., that might have been profitably omitted, but we are not prepared to say that they are positively erroneous.

> Judgment reversed, and a venire facias de novo awarded.