Laura M. Grove sued the defendant for $2,000 insurance on the life of her husband, John W. Grove. The jury returned a verdict for the amount of the claim plus interest, to wit: $2,860.00. Defendant's motions for judgment n. o. v. and for a new trial were denied and this appeal followed.
On June 30, 1926, Grove, who was a clerk employed by the Carnegie Steel Company, purchased a participating certificate in the amount of $2,000.00 in Group Policy No. 2181, issued by the defendant to the Homestead Steel Works Employees Insurance and Safety Association of Carnegie Steel Company. In the spring of 1931, Grove became ill but he continued working *Page 521 
until June 9, 1931. He was unable to work thereafter. The superintendent took the insured's employment card and wrote thereon: "Terminated June 15, 1931, and paid to June 30th, inclusive." Later he cancelled this termination by drawing a line through what he had written and then wrote: "Leave of absence for two months with the understanding he will not be back to this department." The card shows a further notation: "Leave of absence extended 2 months 8-31-31." This meant that the leave of absence was extended to October 31, 1931. Below this appears the notation: "Died 11-27-1931," i. e., November 27, 1931. No termination or notice of discharge appears upon the employment card which constitutes the official employment record of Grove with the Carnegie Steel Company.
William M. Menk, the Assistant Superintendent of the Plate Department of the steel company, testified that when an employee's connection with the company is finally terminated, he is given "a written termination notice through the employment office." He was asked: "Did you give him [Grove] such a notice?" He answered: "To the best of my knowledge. Q. After that did you grant him a leave of absence? A. I did, for two months from July 1, 1931." He gave as a reason for the leave of absence the following: "Necessary reduction in force. . . . Then he asked for leave of absence which would enable him to seek employment without any unnecessary hardship on his part in the plant." He said that the leave of absence was extended and that he signed the extension. There was no other leave of absence. He also admitted that he "scratched out" the notation on the employment card: "Terminated June 15, 1931." The reason he did this was because of Grove's request for a leave of absence. After the re-instatement of the employee by striking out the termination phrase on the employment card, there is no evidence in the record of either a written or oral termination or discharge notice having been given to *Page 522 
this employee. The insurance company claims that the insured's employment was terminated prior to his death and that therefore the following provision of the policy becomes operative: "Termination and Conversion: The insurance upon the life of any member shall automatically cease upon his discontinuance of participation as evidenced in writing signed by him and filed with the Society, or upon termination of his membership in said Association or upon his ceasing to follow the occupation above specified."
The court below in its opinion correctly said: "The chief question to be decided is 'Was there sufficient evidence of the deceased's employment at the time of his death to submit this case to the jury and to uphold a verdict?' If the deceased was not an employee, naturally his executrix would have no right to recover. If he was an employee at the time of his death, she has."
In view of the fact that the words: "Terminated June 15, 1931, and paid to June 30th, inclusive," on the employment card were later cancelled, the only significant thing remaining on the card is the following: "Leave of absence extended 2 months 8-31-31," and beneath that: "Died 11-27-1931." The court below in its opinion said. "What is the legal effect of the before-cited notations? It seems to the trial judge that it is very clear that the deceased still held the position of an employee. The striking out of the word 'terminated' means that the plaintiff was not discharged and the words 'leave of absence' we believe are the equivalent of the words 'the deceased was granted a vacation.' If that were not so and if deceased did not still have a connection with the plant it would not have been necessary to have written on his employee's card that there was a continuation of his leave of absence. And this conclusion becomes stronger when his employee's card showed that there was a notation made of his death." Though it was testified by the Assistant Superintendent that when an employee's employment ceases, he gets a *Page 523 
termination notice, it is a fact that Grove never received such a notice.
In the case of Ozanich v. Metropolitan Life Insurance Co.,119 Pa. Super. 52, the beneficiary of a group insurance policy brought an action to recover an amount specified in the policy which had been issued to her late husband, an employee of the Pressed Steel Car Company. The policy provided that $1,000 would be paid the beneficiary "if death occurs while the employee is in the employ of the employer and while said group policy is in force." The question was whether or not his death occurred during his employment. President Judge KELLER says in that case: "Ozanich was unquestionably an employee of the company on December 31, 1924 [when the group policy was issued]. He admittedly remained such an employee up to and including December 14, 1932. There is no competent proof in the case that following that date he was discharged, or that his employment was ever terminated by himself or his employer, within the meaning of the policy, or that he was even 'laid off,' prior to his death on January 4, 1933. . . . The only question at issue, then, was whether Ozanich's death occurred while he was in the employ of the Pressed Steel Car Co. . . . The foreman of the employer admitted that Ozanich worked for the company on December 14, 1932, and no one testified that he had thereafter been discharged or had been notified that he was no longer in the employ of the company." The Superior Court held in that case that "there was ample evidence to support a finding by the jury that Ozanich was an employee of the Pressed Steel Car Company, within the meaning of the policy, on the day of his death."
The Secretary of the Employees' Association Union testified in the case at bar that he terminated the insurance of John W. Grove and so notified the insurance company. This testimony, however, is immaterial because the Secretary had no right to terminate the insurance *Page 524 
of an employee nor was his testimony admissible as to what his "understanding" was, to wit, "that when an employee did not return after the expiration of his leave of absence his employment was terminated."
Complaint is also made in support of the rule for a new trial to the statement of the trial judge that "the deceased was given a second leave of absence, during which period he died." When defendant's counsel called the court's attention to this statement, saying that such leave of absence expired October 31st and that he died on November 28th, the trial judge answered: "Yes, he did, but he died within the grace period contemplated by the policy of 31 days. I am glad you called it to my attention and I correct my charge." The court's reference to this grace period was misleading since there was no grace period which under the facts of this case would save the employee's insurance if he was not employed at the time of his death. However, the court affirmed the fourth point submitted by the defendant, which reads as follows: "The grace period of thirty-one days granted to the Association for the payment of each monthly premium after the first premium did not continue the insurance upon the life of John W. Grove under the Group Policy in force and effect for a period of thirty-one days after he had ceased to follow his specified occupation and the termination of his employment with the Carnegie Steel Company." After affirming that, the court added: "But I must call your attention to the fact that the plaintiff's claim is that the deceased's employment was not terminated."
Trial judges should be careful not to give the jury conflicting or confusing instructions. Such instructions have been adjudged grounds for reversal: Rice v. Com., 100 Pa. 28;Shaver v. McCarthy, 110 Pa. 339, 5 A. 614; and Com. v. Gerade,145 Pa. 289, 22 A. 464. In the instant case the trial judge so repeatedly instructed the jury that there could be no recovery by the plaintiff unless Grove had the status of an employee at the time *Page 525 
of his death that we do not believe that the jury was misled by the trial judge's inadvertent remarks that Grove died "within the grace period contemplated by the policy of 31 days."
The jury found on sufficient evidence the facts that Grove's employment with the company had not been terminated and that his status was that of an employee on a leave of absence. It is true that the leave of absence had expired before his death but there is nothing in the record to establish that the expiration of this leave of absence was equivalent to a termination of his employment. It may be that the company officials looked upon Grove's employment as having been terminated at the expiration of his leave of absence, but their belief as to his status did not legally determine it. If he was discharged from the company's employ, he was, according to the testimony of the company's Assistant Superintendent, entitled to get a termination notice from the employment office.
Appellant, in interpreting the opinion in the Ozanich Case, supra, says: "Any actual knowledge or reasonable means of knowledge satisfies the requirements of that opinion." The answer to that is Grove's knowledge or his reasonable means of knowledge as to his status was on this record a question for the jury. Appellant says further: "In the present case, it cannot seriously be contended that Grove had no knowledge of his status. The employer found it necessary to discharge Grove, and actual notice of discharge was given to Grove. While in the position of a discharged employee, he sought and obtained a leave of absence for a fixed period." We need point out here only this: that it's an anomaly for a "discharged employee" to seek a leave of absence. He, if discharged, already has a "leave of absence" for an indefinite period. Appellant says further: "Grove's knowledge that he would not be reemployed in his old department upon the termination of the leave, the reasons for seeking the leave of absence, *Page 526 
the application to extend the leave of absence — all are very significant." All these facts may be true but who is to pass on their "significance"? The court below rightly decided that the significance of these facts was for the jury's determination. Appellant also contends that it proved the existence of "a usage that a person who did not make some arrangement at the end of his leave was automatically dropped from the employment rolls. That Grove must have known of this custom and the duty that it imposed upon him, is shown beyond doubt by his application for an extension of the leave." The very contentions made by appellant as to its proof, the existence of a "usage," Grove's knowledge of the usage and as to an "inescapable conclusion" only make it more clear that the issues thus raised were determinable by a jury. SeeSzczygielski v. Travelers Ins. Co., 114 Pa. Super. 352,174 A. 662.
Nor can we accept the contention of appellant that the phrase as used in the insurance contract, "ceasing to follow the occupation above specified," must be given the narrow construction appellant asks for. It is unreasonable to hold that an employee ceased to be protected by his group insurance policy the moment he ceased to follow the identical task which as an employee of that company he was following when he became insured. The "occupation specified" in the certificate issued to Grove was that of "Iron and Steel Manufacturing." This is broad enough to cover anything that contributed to the manufacture of iron and steel. When an employee ceases to follow his task because of illness or leave of absence or both, he does not thereby forfeit his status as an employee. SeePeople v. Lynch, 149 N.Y. Supp. 895.
The error in appellant's position is in the assumption that "expiration of a leave of absence" and "termination of employment" are equivalent. They are not. Many members of official and industrial bodies obtain leaves of absence. Their status as members of *Page 527 
those bodies does not terminate when the leave of absence expires even though at that time they do not "return to work." If the steel company intended to terminate Grove's employment at the expiration of his leave of absence, it should have given him due notice of that fact. Plaintiff's prima facie case showing that her husband at the time of his death was still within the protection of his group insurance policy, entitled her to go to the jury.
The judgment is affirmed.