## Melikian *v.* Lincoln National Life Insurance Company, Appellant.

210

Argued October 10, 1957. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*John B. Hannum, 3rd,* with him *Richard J. van Roden,* and *Pepper, Bodine, Frick, Scheetz and Hamilton,* for appellant.

*James Francis Lawler,* with him *Ostroff, Anderson & Lawler,* for appellees.

OPINION BY GUNTHER, J., January 21, 1958:

This appeal arises out of an action of assumpsit submitted for decision by stipulation.

Khatchig Panossian was an employe of the Penn Surgical Manufacturing Company. The company obtained group insurance on its employes with Lincoln National Life Insurance Company, appellant. Under the plan this employe was insured for the sum of $1,-000 under certificate No. 79. Panossian became ill during the fall of 1952 and did not report for work after October 9, 1952. Penn Surgical continued paying premiums on behalf of Panossian up to and including June 30, 1953. On May 22, 1953, the Company wrote Lincoln National requesting termination of his coverage listing October 9, 1952 as the last day of employment. Upon receipt of notice of date of termination of employment, defendant gave Penn Surgical a credit for premiums paid on behalf of Panossian back to October 31, 1952. Panossian died October 28, 1953. The certificate contained an extension of death benefits clause of one year. Judgment was rendered in favor of plaintiffs and this appeal followed.

The sole question before us is whether Lincoln National is obligated to pay the death benefit under the extension of death benefit clause contained in the certificate.

The clause reads as follows:

"3. *Extension of Death Benefit.* If, while the Policy is in force, due and satisfactory proof is furnished to the Company that the employment of the insured employee terminated on account of total disability from bodily injury or disease, which wholly prevented the employee from engaging in any and every business or occupation and from performing any and all work for compensation or profit, and that such disability was continuous from the date of termination of employment

to the date of death of the employee and that such death occurred before the employee attained age sixty-five and within a period dating from such termination of employment not longer than the time such employee's insurance had been in force at the date of such termination of employment, but in no event longer than twelve months, then the amount of insurance on the life of the employee at the date of termination of employment shall be paid, provided said proof is furnished to the Company at its Home Office within ninety days of death of the employee."

"4. *Termination of Individual Insurance.* Except as provided under Sections of the Policy headed Extension of Death Benefit and Conversion Privilege, the insurance of the employee insured under the Policy shall automatically terminate immediately upon the earliest of the following dates: (a) the date of his failure to make, when due, any contribution toward the payment of premium to which he has agreed in writing, (b) the date of his transfer to a class of employees not eligible for insurance hereunder, (c) the date of termination of his employment with the Employer, (d) the date of termination of the Policy."

"Termination of employment shall, for all purposes of this insurance, be deemed to have occurred if an employee is pensioned or retired or is absent from active work for any other reason; but, until the Employer gives the Company written notice to the contrary or discontinues the payment of the premiums for his insurance, he may nevertheless consider any employee absent from active work because of sickness or injury as still employed, and the Employer may also consider any employee absent from active work because of temporary layoff or leave of absence as still employed until the end of the policy month following that in which cessation of active work occurred."

It is for us to determine whether the clause provides for extension of twelve months from the time that the insurance was in force or whether it runs from the time work stopped. In *Blue Anchor Overall Co. v. Pennsylvania Lumberman's Mutual Insurance Company*, 385 Pa. 394, 123 A. 2d 413, it was held that an insurance policy will be construed most strongly against the insurer who had prepared it, and if there is any doubt or ambiguity as to its meaning, the doubts or ambiguities will be resolved in favor of the insured.

In *Ozanich v. Metropolitan Life Insurance Company*, 119 Pa. Superior Ct. 52, 65, 180 A. 576, we said: "We think. . . . that the clause above referred to contemplates that an employer terminating the employment of an employee, by discharge, shall do so in such a way that the employee has notice or knowledge that his employment is terminated." Panossian received no formal notice of termination. *Grove v. Equitable Life Assurance Society of United States*, 336 Pa. 519, 9 A. 2d 723 supports the rule that an employe who ceases to follow his task because of illness does not thereby forfeit his status as an employe who is insured under a group insurance policy.

Panossian admittedly remained an employe as evidenced by the letters of termination dated May 14 and 22, 1953. Premiums were paid to the defendant by Penn Surgical to June 30, 1953. On July 1, 1953 a credit was given Penn Surgical for eight months reverting back to the date of October 31, 1952, as the termination date of the policy by virtue of discontinuance of premiums. If the company intended to terminate Panossian's employment on October 9, 1952, it should have given him due notice of that fact. Plaintiff's case shows that Panossian, at the time of his death, was still within the protection of his group insurance policy. Payment by the employer of premi-

ums through June 1953 operated to keep the employ-ment status of the assured. It is a reasonable infer-ence that the employer continued payments of premi-ums in the hope that Panossian would be able to re-turn to work. We therefore agree with the court be-low that at the time of death, on October 28, 1953, the insured was covered by the one year extension of death benefits.

Judgment affirmed.