Quinten *v.* United States Steel Corp., Appellant.

Argued April 21, 1958. Before HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (RHODES, P. J., and WOODSIDE, J., absent).

Before SMART, J.

*Gilbert J. Helwig,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*Ella Graubart,* with her *Ruth Forsht,* and *Patterson, Crawford, Arensberg & Dunn,* for appellees.

OPINION BY GUNTHER J., June 11, 1958:

This appeal is by United States Steel Corporation from the refusal of the court below to grant motions for judgment n.o.v. and for a new trial after a directed verdict for plaintiffs in the amount of $4,927.50.

Emanuel Quinten was employed for many years by the defendant corporation. In 1935, the defendant inaugurated a group life insurance plan for its employees and a certificate of insurance was issued to him under the terms of the master policy, in which the insured designated his three children, plaintiffs, as beneficiaries. Contributions toward the premium were deducted from his pay for a period of fifteen years. The insured stopped working on January 11, 1950 because of mental illness and he was committed to Woodville State Hospital where he remained until his death on February 14, 1956.

From February, 1950 to July, 1950, the insured's premiums were paid by Francis Quinten, one of the plaintiffs, and thereafter, as a result of certain discussions in the office of industrial relations of the defendant, he requested that his father's vacation pay be applied toward the payment of premiums. Some time in the latter part of 1953, Francis Quinten moved to California where he continued to live down to the time of trial. From July, 1950 to February, 1952, defendant paid the premiums from the wages due to the insured, Emanuel Quinten. Thereafter, defendant terminated the employment and cancelled the policy.

When the father became mentally ill, Dolores Matvia, one of the children, moved into his home and remained there down to the date of trial. The other child, Walter Quinten, was a child 14 years of age when

his father became ill. All of the children testified that they did not know that defendant intended to discontinue the policy and two of the children testified they knew nothing about the existence of said policy. No notice was given to anyone of the termination of employment or the cancellation of the insurance, and defendant knew that the insured had been committed to Woodville State Hospital.

On March 30, 1955, a guardian was appointed for Emanuel Quinten, who collected from the defendant the sum of $5,545.98, being the employee's pension and $157.13 in net wages. The guardian did not know of the existence of the policy until after the death of the insured.

Subsequent to the death of the insured a complaint in assumpsit was filed against defendant claiming damages for failure to maintain decedent's insurance, for failure to give decedent or his representatives any notice of the intended termination of employment and cancellation of his policy by reason of which the statutory conversion rights of said policy were lost. As damages, the value of the insurance contract in effect at the time of the insured's mental illness was claimed. At the trial, defendant attempted to introduce evidence of a seniority provisions of a collective bargaining agreement which tended to show that the seniority of an employee could not survive a two-year absence from active work because of illness, unless the illness was compensable under Workmen's Compensation Act. This offer was refused as irrelevant and having nothing to do with defendant's duty under the group policy.

The pertinent provisions of the insurance contract provided as follows:

"Discontinuance of Insurance

"(a) The insurance on any Employee insured hereunder shall cease automatically thirty-one (31) days

after the date of the termination of employment of such Employee, except as provided in the second paragraph below.

"Cessation of active work by an employee shall be deemed to constitute the termination of his employment, except as provided in the next paragraph.

"In case of the absence of an Employee from active work on account of sickness or injury, or for not longer than twenty-four months on account of leave of absence or temporary lay-off, the employment of such Employee may, for the purposes of the policy, be deemed to continue until terminated by the Employer. The insurance hereunder on such Employee shall cease thirty-one (31) days after the date of such termination by the Employer, as evidenced to the company by the Employer, whether by notification or by cessation of premium payment on account of the insurance hereunder of such Employee.

"Conversion Privilege

"In case of the termination of the employment of the Employee for any reason whatsoever his insurance shall cease thirty-one (31) days after such termination, but the Employee shall be entitled to have issued to him by the Company, without evidence of insurability, and upon application made to the Company within thirty-one (31) days after such termination of employment, and upon the payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then-attained age (nearest birthday), a policy of Life Insurance in any one of the forms customarily issued by the Company, except Term Insurance, in an amount equal to or, at the option of the Employee, less than the amount of his insurance under the Group Policy at the time of such termination. An individual policy so applied for

shall become effective only upon the cessation of the Employee's insurance under the Group Policy.

"Extended Death Benefit

"The Group Policy contains, in substance, the following provision

ı "Upon receipt by the Company of due notice and proof—in writing—that the death of an Employee formerly insured under the Group Policy has occurred prior to his sixty-fifth birthday and (a) within twelve (12) months from the date of termination of his employment or (b) within a period, beginning with the date of termination of employment, equal to the time during which the Life Insurance under the Group Policy on such Employee had been in force, whichever is less, and upon receipt of further proof—in writing—that such Employee was, from the date of termination of his employment to the date of his death, continuously and totally disabled, as a result of bodily injury or disease, so as to have been thereby prevented from engaging in any and every business or occupation and from performing any and all work for compensation or profit, and upon the surrender of this Certificate and Certificate Riders, if any, attached hereto, the Company shall pay, subject to the Terms of the Group Policy, to the Beneficiary of record, the amount of insurance, if any, in force on account of such Employee at the date of the termination of his employment; provided, however, that no payment shall be made under the provisions of this Benefit unless such notice and proof of such death and of such disability is submitted to the Company within ninety (90) days after the date of such death; nor shall any such payment be made unless the Group Policy is in full force and effect at the date of the death of such Employee."

Two questions are raised by this appeal: (1) Was the court below correct in directing a verdict for the

beneficiaries of a group insurance policy where the evidence disclosed that the employer gave no notice of termination of employment of cessation of insurance; and (2) Did the court below err in excluding evidence of the seniority provisions of the collective bargaining agreement?

There is no question of the right of an employer to terminate the employment of an employee generally or specifically for cause. Since the hiring of an employee is not for a definite term, the tenure is at will and terminable at any time by either party. *Trainer v. Laird et al.,* 320 Pa. 414, 183 A. 40; *Brown v. Carnegie-Illinois Steel Corporation,* 168 Pa. Superior Ct. 380, 77 A. 2d 655. But the question of whether such termination may be effected without notice, particularly where certain valuable rights of a group insurance contract may hinge thereon, is something else. In *Grove v. Equitable Life Assurance Society of United States,* 336 Pa. 519, 9 A. 2d 723, the Supreme Court held that "When an employee ceases to follow his task because of illness or leave of absence or both, he does not thereby forfeit his status as an employee."

In *Jones v. Metropolitan Life Ins. Co.,* 156 Pa. Superior Ct. 156, 39 A. 2d 721, we had occasion to construe almost the identical provisions of a group insurance contract and concluded that when the absence from work is on account of sickness or injury, the employment may never be terminated and the employer has the option to continue the employment indefinitely unless some positive act clearly indicating the ending of employment is taken. We further held that to "assure the employee of receiving the advantage conferred by the statute a duty is cast upon the employer to inform the employee clearly and unequivocally when his employment is being terminated to give him an opportunity to make a choice." The insured, therefore, when

the absence was attributable to sickness, could assume that the insurance would continue in force until advised of the termination of employment. This is particularly so when, as here, there were ample funds from wages in the hands of the employer to continue payment of premiums beyond the two years.

Quinten became mentally ill and permanently disabled when he was an insured employee of the defendant. In *Armstrong v. J. Hancock Mutual Life Insurance Co.*, 164 Pa. Superior Ct. 507, 66 A. 2d 468, we held that if the insured was totally disabled at the time of termination of his employment, his right to continued protection under the policy became vested. See also *Turley v. J. Hancock Mutual Life Insurance Co.*, 315 Pa. 245, 173 A. 163. The defendant terminated the employment on February, 1952, but failed to give notice of the termination of such employment and the cancellation of the policy. Such notice must be given to relieve the employer. *Poch v. Equitable Life Assurance Society of United States*, 343 Pa. 119, 22 A. 2d 590; *Ozanich v. Metropolitan Life Insurance Co.*, 119 Pa. Superior Ct. 52, 180 A. 67.

Appellant urges that while it may have been under legal obligation to give notice of the termination of employment to the insured, it was under no obligation to give such notice to the beneficiaries. The answer to this contention is that it gave no notice to anyone whatever. This dereliction of duty cannot be dismissed so summarily. At least, notice should have been sent to his place of residence. Appellant knew that the insured was mentally ill and under such circumstances any notice given to him would not have been legally sufficient notice. But even this was not done. Appellant insists that the beneficiaries were not parties to the contract and if a breach of contract occurred by the failure to give notice, the action should have been brought by the

personal representative of the deceased employee. While it may be true, generally, that beneficiaries have no vested interest in such a contract during the lifetime of the deceased but only an expectancy (*Fidelity Trust Co. v. Travelers Insurance Co.*, 320 Pa. 161, 181 A. 594; *Miller v. Travelers Insurance Co.*, 143 Pa. Superior Ct. 270, 17 A. 2d 907), upon the death of the insured, the rights of the beneficiary are vested. And since suit was brought after the death of the insured, the rights of the beneficiaries are determined in this case under the rights which the insured had. Such beneficiaries are deemed donee beneficiaries and not incidental beneficiaries as contended for by appellant. See Restatement, Contracts, section 133. Furthermore, if by failure to give notice the insured gained vested rights in his policy of insurance, such right would not pass to the personal representative but would vest in the beneficiaries.

Appellant next contends that even if the conversion privileges might have been exercised by some one upon receipt of proper notice, there is no authority given to a guardian to take out and maintain such a policy. Without extending the discussion on this issue, it is only necessary to point out that the guardian could have exercised the conversion option for the insured and the children could have made the payments thereon. It is further urged that when the guardian requested and received the pension for the employee, that action terminated the employment relationship at least in June of 1955. The answer to this contention is that defendant credited the employee with pension benefits as of August 1, 1950, while still deducting the premium for the insurance then in effect. It did not consider the employee on pension at that time. But what is more important, if the argument is accepted that the insured went on pension in 1955 when the guardian obtained the pension benefits, under the ex-

tended death benefits provided in the insurance policy, the beneficiaries could have collected the face amount of such insurance as death occurred less than twelve months from such termination. See *Melikian v. Lincoln National Life Insurance Co.*, 185 Pa. Superior Ct. 209, 138 A. 2d 170.

In support of its motion for a new trial the defendant argues that the trial court improperly excluded evidence relating to seniority rights. The court below properly pointed out that seniority rights had nothing to do with defendant's duty under the policy. Such agreement could not have affected the terms of the insurance contract. *Jones v. Metropolitan Life Insurance Co.*, supra.

We are constrained to hold, therefore, that since no notice was given as required, the employment contract could not be terminated so as to affect the policy of insurance; that the employment contract, of which the insurance policy was a part, was breached and that the incidents of the insurance policy as between the employer and the employee continued; that the plaintiffs had a right to bring the action and that a cause of action was proved, and that the measure of damages involved was the value of the insurance policy.

Judgment is affirmed.