Vahlsing *v.* H. Rothstein & Sons, Appellants.

Argued October 5, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNING-
HAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Edmund W. Kirby* of *Morris & Kirby,* for appellants.

*Charles F. Phillips,* and with him *Winfield W. Craw-
ford,* for appellee.

OPINION BY KELLER, J., December 16, 1932:

This action of assumpsit arose out of the sale of
three cars of carrots by defendants to plaintiff. The

sale was made through J. B. White, a broker. The plaintiff paid for the first two cars, before he discovered that they were not U. S. No. 1 grade, as they had been represented to him by White. He sold them in the open market and sued defendant for the difference between what he paid for them and what they brought. Defendants denied that they had agreed to sell U. S. No. 1 grade carrots, and presented a counterclaim for the damages suffered by them by reason of plaintiff's refusal to accept the third car. It was proved on the trial that the carrots were not U. S. No. 1 grade; and admitted by the defendants that they had never been "government inspected," which is implied in the use of that term (pp. 57-a and 101-a). The court left to the jury to find (1) whether White was the agent of the defendants in making the sale and (2) whether the contract of sale called for U. S. No. 1 grade carrots, charging them that unless they answered both questions in the affirmative, the defendants were entitled to a verdict. The jury found for the plaintiff, thus resolving any disputed question of fact in his favor.

The defendants contend (1) that the contract of sale was wholly in writing and contained no representation that the carrots were to be U. S. No. 1 grade; but that the sale was made "transit acceptance," which means that the buyer agreed to accept the carrots in transit as they were, and assumed the risks and consequences of transportation and delivery; and that the court should so have construed the contract and given binding instructions for the defendant; and, failing that, (2) that a new trial should be granted because of the court's errors in its rulings on evidence and charge to the jury. There were errors committed by the court, both in the rejection of evidence and the charge to the jury, but they were all to the advantage of the appellants and adverse to the appellee, so the former have no ground for complaint here on that score.

For example, (1) following the testimony of J. B.
White that he was acting as agent for the defendants
in making the sale, the court should have admitted in
evidence the "bought and sold note" or confirmation of
sale, (Exhibit "A"), which the plaintiff received from
him, and which described the subject matter of the con-
tract as "3 cars of California carrots U. S. No. 1 grade
...... transit acceptance;" and (2) the court, on the
trial, confused the "declarations" of an agent with the
testimony of the agent, and instructed the jury that
the agency of White for the defendants could not be
established by his evidence, overlooking the fact that
the rule is that agency cannot be established by the
*declarations* of the agent, meaning his hearsay declara-
tions to others, but that it has no application at all to
the direct testimony of the agent on the trial, which is
always competent to establish the fact of agency: Isaac
v. D. & C. Mut. Fire Ins. Co., 301 Pa. 351, 354; 152 Atl.
95; Bunting v. Goldstein, 283 Pa. 356, 359, 129 Atl. 99.

Both of these matters affected the plaintiff injuri-
ously and he had ground for complaint concerning
them, but they furnish no reason for disturbing a
verdict in his favor. The defendants, certainly, were
not harmed by them.

The defendants rely chiefly on the first ground of
defense mentioned above, viz., that the contract of sale
was in writing and required a directed verdict in their
favor. This we cannot agree to. The letters and tele-
grams relied on were relevant and properly admitted
in evidence, but they bore on their face reference to
prior telephone conversation or conversations, which
were necessary for their proper meaning and under-
standing—for example, one telegram referred to a
telephone conversation in which defendants explained
that Guadaloupe and Santa Maria carrots came from
practically the same district, the inquiry on behalf of
plaintiff being for Santa Maria carrots. If, as was

asserted by White in his testimony, the inquiry made by him of the defendants, at the instance of the plaintiff, at the very outset, was for Santa Maria U. S. No. 1 grade carrots, and defendants said they had in transit three cars of such carrots, the subsequent letters and telegrams relating to a sale of those three cars of carrots would be construed to refer to Santa Maria or, (following the above mentioned telephone conversation), Guadaloupe—being "practically the same district"—U. S. No. 1 grade carrots, and, when the three cars specified by defendants—giving freight line and number of the cars—were delivered, pursuant to said contract of sale, the plaintiff had a right to expect that they would contain carrots of the grade represented, and hold the defendants liable in damages if the carrots delivered were not of the grade contracted to be sold. Letters or telegrams purporting to be confirmations of prior telephone conversations do not have to have every item of the contract specified in the writing; and if telephone conversations relate only to a sale of produce of a certain kind and grade, the writings which follow, and effect or confirm such a sale, will, in the absence of a change of subject matter clearly set forth in the writings, be construed in the light of the subject matter of the conversations.

The qualification, "transit acceptance," will be applied to the condition of the produce as a result of its moving in transit, but will not excuse a defect due to the fact that the initial shipment was not the grade of produce contracted for. Counsel for defendants admitted this on the trial when in response to a question asked by plaintiff of Max Rothstein, one of the defendants, along this very subject, "But, Mr. Rothstein, if you sell that car as U. S. Grade No. 1 you are bound to deliver U. S. Grade No. 1?", he stated "I will admit that" (p. 100-a).

The jury found that in making the sale White acted

as agent for the defendants (Ritchie Co. v. Albion Mfg. Co., 173 Pa. 447, 34 Atl. 450), and there was abundant evidence to support the finding. He was a broker acting in a certain sense for both parties; for the defendants in making the sale; for the plaintiff in making the purchase. See 9 Corpus Juris 510, 511, 512 and 143; Bouvier's Law Dictionary (Rawle's 3d Revision) 399; C. Clothier Jones v. Adams, 98 Pa. Superior Ct. 246, 249. The first step taken, it is true, was on behalf of plaintiff in inquiring whether defendants had any cars of Santa Maria U. S. No. 1 grade carrots for sale; but on learning from defendants that they had three cars of such carrots in transit, and receiving authority from them to make the sale, he acted for the defendants in selling them to the plaintiff, and mailed both of the parties—so he testified—written note or confirmation of the sale. The sale so effected by him was from defendants to plaintiff,— clearly so, notwithstanding the evasive and contradictory testimony of Max Rothstein—and the defendants recognized his agency by agreeing to pay his commission for the sale. Apart from the averment in the plaintiff's statement that White acted as agent for the defendants in making the sale, it would have made little difference on whose behalf he was acting, provided the evidence convinced the jury that the subject matter of the contract related to U. S. No. 1 grade carrots. For if White was agent for defendants in making the sale, the latter would be bound by his contract; while if he was agent for the plaintiff, the defendants would be bound to carry out the sale as contracted for with him on plaintiff's behalf.

We have carefully considered all the evidence in the record and find no error in the court below in refusing (1) to enter judgment non obstante veredicto for the defendants or (2) to award the defendants a new trial.

The assignments of error are overruled and the judgment is affirmed.