Szczygielski *v.* Travelers Ins. Co., Appellant.

Argued April 11, 1934.

Before Trexler, P. J., Keller, Cunningham, Baldrige, Stadtfeld, Parker and James, JJ.

*John B. Brooks,* and with him *Alban W. Curtze* and *Isaac J. Silin,* for appellant.

*Henry C. Baur,* for appellee.

OPINION BY JAMES, J., October 3, 1934:

Plaintiff sued upon a certificate of insurance issued to her husband, Frank Szczygielski, in connection with a group life policy of the appellant insurance company held by the Erie Malleable Iron Company, where Szczygielski had been employed prior to his death on November 14, 1931. This certificate contained the following provision: "The insurance of any employe covered hereunder shall end when his employment with the employer shall end......." The group life policy, called the master policy, under the terms and conditions of which the certificate was issued, contained the same provision, with the following additional clause: "Temporary lay-off or leave of absence for reasons other than physical disability as aforesaid [here irrelevant] shall not be considered as termination of employment for the purpose of this insurance unless the employer shall so elect."

The statement of claim averred that Szczygielski "remained in the employ of the Erie Malleable Iron Works continuously from December 30, 1922, until the date of his death." Defendant denied this averment, and, on the contrary, averred that he was dis-

charged by his employer on October 7, 1931, and was not in its employ after that date.

Upon this narrow issue the case was tried before a jury, the plaintiff's own testimony being to the effect that the assured was not actually working at the time of his death, but that he was temporarily laid off on October 7th, about five weeks before his death. The jury returned a verdict in favor of the plaintiff for the face amount of the certificate and the trial judge subsequently discharged defendant's motions for judgment n. o. v. and for new trial. Defendant appealed.

It argues in the first and second assignments of error that plaintiff, having pleaded continuous employment of the assured until the time of his death, should not have been permitted to rest her proof upon the exception of temporary lay-off contained in the group policy. We do not see much in the contention. In its own written undertaking defendant defines continuous employment. "Temporary lay-off," it declares, "shall not be considered as termination of employment." It is self-evident that if the employment is not to be considered as terminated in case of lay-off, it must be considered as continuing. Thus we need only examine the record to determine if there was sufficient evidence of temporary lay-off to submit the question to the jury.

Plaintiff testified that her husband had been employed by the Erie Malleable Iron Company for a number of years, continuously with the exception of a period about three years before when he had been temporarily laid off. In the middle part of October, 1931 (her husband stopped working on the 7th) she went to the employment office of the company, but her testimony, given through an interpreter, is not clear at first, whether that visit was for the purpose of securing his re-instatement or to ask that the com-

pany keep him more steadily employed because of her great need. Later she says she went there to ask if they could not give him more work rather than lay him off. But the responsible officers informed her that her husband had come to work in a drunken condition and that he had to be laid off; that if he quit drinking they would put him back to work again. There was testimony that they had done so at least once before. She stated positively that the officers informed her that Szczygielski was not "laid off for good, just temporary," and when work picked up he would be called back again. They also told her that he could call at the plant every day. Her testimony was corroborated in the main by her daughters, aged 14 and 12, who accompanied her to the employment office at that time.

There was also some corroboration of this testimony in the circumstance that at the time of his supposed final discharge, although it was the admitted custom of the company in such case to demand the immediate return by the employe of the company property noted on his employment card, the notation on Szczygielski's card being "goggles" and "policy," no demand was made for the goggles until after his death, and there was no discussion concerning the surrender or cancellation of his insurance policy at the time of the discharge.

The oral testimony on behalf of the defendant was strongly persuasive in proof of its contention that the assured was permanently discharged on October 7th. The company's employment manager, the foreman who sent the assured home, the assistant and the stenographer in the employment office, flatly denied the plaintiff's testimony as to the temporary nature of the discharge. It even disputed the presence of the two daughters on that occasion. Their testimony was positive and mutually corroborative, and they were disinterested witnesses. Its effect, from a read-

ing of the record, is to suggest the possibility that plaintiff was testifying to a prior occasion when she went to the Iron Company's office to intercede for her husband. But the credibility of the defendant's testimony, being oral, was still a question for the jury. As was said in Trainer v. Fort, 310 Pa. 570, 577, 165 A. 232, "The rule is well settled in Pennsylvania that if a case is supported by competent oral testimony, no matter how strong may be the countervailing testimony, it is for the jury."

The other contention under these assignments, that the company elected to treat his temporary lay-off as a termination of the policy, as was its privilege under the clause above cited from the master policy, not having been pressed at trial, the case there having been tried upon the theory that the lay-off was not temporary, need not be considered here.

The recital of the testimony above also disposes of the appellant's third assignment of error, the court's refusal to grant a new trial. Our appellate courts have repeatedly held that they will not disturb an order of the trial court either refusing or granting a new trial unless it is based on error of law or where the record shows an unmistakable abuse of discretion. Where the question raised in the case must be determined upon a consideration of oral evidence, we necessarily largely rely upon the judgment of the court below, which best knows what are the requirements of justice in such cases: Williams v. Southern Mut. Ins. Co., 312 Pa. 114, 122, 166 A. 582.

The fourth and fifth assignments complain of error in the court's charge. We have read it in connection with the whole record and can not say that it was misleading or prejudicial. Appellant points out two instances of misstatement of evidence, viz., that the plaintiff testified that her husband was back at work within a month prior to his death, and that he went

to the plant every day after the lay-off or discharge. As to the first, the record shows that plaintiff, in answer to question by counsel as to whether her husband went back to work about a month before he died, answered that he did; the second excerpt is a slight misstatement of the evidence of the appellee that her husband had been *told* that he might come to the shop every day. These inconsistencies were inconsequential and could not have had any prejudicial effect upon the jury's mind. In any event, at the conclusion of the charge the court asked counsel if there was anything further on either side. This was the time for defendant to speak, and having remained silent it will not be heard to complain here. Menhennet v. Davis, 71 Pa. Superior Ct. 260, 263; Tropical P. & O. Co. v. Sharon Bldg. Co., 313 Pa. 51, 53, 169 A. 105.

The last assignment complains of the court's refusal to admit in evidence a certificate of the Bureau of Vital Statistics showing the cause of Szczygielski's death on November 14, 1931, to have been delirium tremens. The court correctly excluded it as too remote in point of time from the date of his discharge to throw any light upon the question as to whether the employment ceased on that date, and that the excessive drinking might have occurred after October 7, 1931 with the same result. The implication from the certificate that the assured was an inebriate, already admitted in the plaintiff's own testimony, might as reasonably support a conclusion that he was temporarily laid off for that reason, as was the case on at least one prior occasion, as it would that he had been unequivocally discharged. We see no merit in this assignment.

Judgment affirmed.