## Ozanich, Appellant, v. Metropolitan Life Insurance Co.

54

Argued May 3, 1935.

Before KEL-
LER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER,
JAMES and RHODES, JJ.

*Abraham Fishkin,* with him *Harry Ravick,* for appellant.

*D. C. Jennings,* for appellee.

OPINION BY KELLER, P. J., July 18, 1935:

This was an action of assumpsit on a group life insurance policy, issued by the defendant company, insuring employees of the Pressed Steel Car Company and its subsidiaries, and on the certificate of insurance issued under the terms and conditions of said policy to John Ozanich, an employee of said latter company, brought by "Francis" Ozanich, the beneficiary named in said certificate and the wife of the insured employee. A verdict was rendered in favor of the plaintiff for the amount of the certificate of insurance. The court subsequently entered judgment in favor of the defendant non obstante veredicto, on the ground that evidence of a custom of the Pressed Steel Car Company relative to the employment of its workmen during the depression since 1930, which conduced to the verdict for plaintiff had been improperly received, and with this evidence

excluded the defendant was entitled to binding instructions. The judgment must be reversed. If the evidence was improperly admitted, the remedy was to grant a new trial. The record *at the close of the trial* determines the right of the court to enter judgment non obstante veredicto under the Act of April 22, 1905, P. L. 286. If on consideration of the evidence in that record it appears that binding directions for either party would have been proper at the close of the trial, the court may enter judgment later with the same effect, provided a point for binding instructions was presented by that party: Dalmas v. Kemble, 215 Pa. 410, 413, 64 A. 559. But the court cannot eliminate evidence that was material in securing the verdict, and then enter judgment non obstante veredicto with that evidence out of the record. If it erred in the admission of evidence affecting the verdict its only course is to grant a new trial. For this reason the judgment in this case would, in any event, have to be reversed. But we are also of opinion that the evidence referred to was properly received in evidence, was relevant, competent and material, and with the other evidence in the case was sufficient to sustain the verdict for the plaintiff, and that judgment should be entered on the verdict.

The group policy in suit, No. 2435G, was issued on December 31, 1924. It provided initial insurance for 3753 employees; called for an initial monthly premium of $4367.85 and carried total initial insurance of $4,596,000. A certificate, No. 2471, was on the same date issued to John Ozanich, an employee of Pressed Steel Car Company insuring him for $1000, under and subject to the terms and conditions of Group Policy No. 2435G, payable to "Francis Ozanich" as beneficiary "if death occurs while the employee is in the employ of the employer and while said group policy is in force." The group policy was unquestionably in force when Ozanich died. The policy and certificate provided that in case

of the termination of the insured employee's employ-· ment, for any reason whatever, the insured employee should be entitled to have issued to him by the insurance company, *without evidence of insurability,* and upon application made to the insurance company within thirty-one days after such termination, and upon payment of the proper premium applicable, a policy of life insurance in any one of the forms customarily issued by such company, except term insurance, in an amount equal to the amount of his insurance under said group policy at the time of such termination. This clause, while not directly applicable in this case, shows that the policy contemplated notice to the employee, as well as to the insurance company, of any action on the part of the *employer* terminating his employment. The policy and certificate also provided for total and permanent disability benefits; but they are not involved in this case for there was no such permanent disability as was contemplated in the policy contract.

The policy contract in suit includes not only the group or master policy, but also the certificate of insurance issued to the employee, for in it, alone, does the name of the beneficiary appear: Turley v. John Hancock Mutual Life Ins. Co., 315 Pa. 245, 173 A. 163.

The policy contract calls for payment of monthly premiums in advance, based on the number of employees insured at the time, their ages, etc. These premiums are payable to the insurance company by the employer, but the cost is borne by both employer and employees; at least 25 per cent of the premium must be paid by the employer, and the balance is deducted from the employees' wages. New employees may be insured upon notice and application to the company, and their insurance takes effect on the first or sixteenth day of the calendar month following the date of such application and the payment of premium. A grace of thirty-one days is allowed the employer for the payment of every

premium after the first, during which time the insurance shall continue in force. An average premium rate per thousand dollars was determined by dividing the premium due on the date of issue of the policy by the number of thousands of dollars of insurance then issued. Thereafter monthly premiums, per thousand dollars of insurance, for all employees insured or becoming insured, irrespective of age, were computed at such average rate until recomputed as provided in the policy. In other words the monthly premium paid in advance was based on the average monthly rate of premium for all insured employees, as thus computed.

The policy also provided that not later than the 21st day of every month the employer should report to the insurance company the names of all employees who had ceased to be in its employ since the 21st day of the preceding calendar month, together with the date when each such employee left said employment, and the insurance should be discontinued as of the exact date such employee left the employ of the employer. But lay-off or leave of absence, of three months or less, should not be considered a termination of employment within the meaning of the policy unless *notification to the contrary* should have been given within thirty-one days after the date when such lay-off, or leave of absence commenced. There was no evidence that such notification was ever given in this case.

The policy also provided for adjustment of premiums due to discontinuance of insurance, etc.; and for the keeping by the insurance company in card index form of a register which should show the names of all employees insured under the policy, and the amount of insurance on each of such employees; and contained the following clause: "Copy of said Register, as of the date of this policy, is furnished to the employer herewith and made a part hereof, [that is, of the policy], and copies of entries in said Register subsequent to said date will be

furnished by the Company to the Employer and will thereupon become a part hereof."

There are many other provisions which throw some light on the policy and its interpretation, but we think those already mentioned are sufficiently explanatory. There is nothing in the rest in conflict with what we have stated.

John Ozanich was unquestionably an employee of the Pressed Steel Car Company on December 31, 1924. He admittedly remained such an employee up to and including December 14, 1932. There is no competent proof in the case that following that date he was discharged, or that his employment was ever terminated by himself or his employer, within the meaning of the policy, or that he was even 'laid off,' prior to his death on January 4, 1933.

The group policy was admittedly in full force when Ozanich died. The premium covering his insurance was paid by his employer in advance for the month of December. If any errors had been made by the employer in calculation and remittance they were and are subject to adjustment. The only question at issue, then, was whether Ozanich's death occurred while he was in the employ of the Pressed Steel Car Co. He had been continuously employed from December 31, 1924 to December 14, 1932. The foreman of the employer—a witness called by defendant—admitted that John Ozanich worked for the company on December 14, 1932, and no one testified that he had thereafter been discharged or had been notified that he was no longer in the employ of the company.

We come now to the testimony which was admitted on the trial and which the court subsequently felt had been erroneously received.

When the depression came in 1930, the Pressed Steel Car Company put into effect a practice respecting the distribution of work to its employees. It did not have

sufficient work to keep all of its employees on continuous steady work, and it endeavored to distribute such work as it did have among its employees in the following manner. Each employee had a brass check with his employment number stamped on it, which he was entitled to keep until discharged, and which, when presented, secured his admission to the works. Each employee had also a time card, which, as long as he was not discharged was left in a rack kept in the office for that purpose and was punched each day he reported for work. The employees reported daily at the plant, and when work was slack it was divided among as many as could be used to advantage, and the rest were sent away for the day. The next day this was repeated and one who did not work the first day might be put to work the second day. Thus, day by day, for several years the employees received 'staggered' employment, as far as the work went, and their employment was not terminated as long as their brass checks were not taken from them and their time cards not taken from the rack. They might work only one or more days in a fortnight, but they were still in the employ of the company, (See Romig v. Champion Blower & Forge Co., 315 Pa. 97, 172 A. 293), and covered by the defendant's insurance policy, for their share of the advance premiums for the month was deducted from the money earned by them from their wages for labor, and paid to the defendant company with the employer's contribution to the expense.

This was, of course, not a 'custom' as that term is strictly used in connection with a trade custom. It did not have to be. It was rather the employer's 'practice' or 'method' of distributing work. It applied to no company but the Pressed Steel Car Company. But it was proved by a number of Ozanich's fellow workmen and was not only not disproved by the defendant but was corroborated by its witness, the foreman. It was not

essential that the insurance company should know about the practice, for they had no concern with how the employer distributed or 'staggered' its work among its employees, provided they actually were in its employ and their premiums for insurance were paid. Hence we see no error in admitting evidence of this practice of distributing work. That the amount of work that each employee got was uncertain and dependent on the necessities of the period and the peculiar suitability of each employee, did not render it less of an employment than if every man had worked for one or two days a week as in the Romig case. Each employee who thus received work as it might be allotted to him was still an employee, within the meaning of the policy, for whom the employer was paying monthly premiums of insurance, partly out of his wages and partly out of the company's funds, until he was notified that his employment was terminated and his brass check taken away and his time card removed from the rack, or other method of discharge or termination of employment put into effect. None of these things was ever done to this insured.

Ozanich worked on December 14, 1932. The next day he came back, but was given no work. Nor was he told he was discharged or his employment ended. He reported every working day from December 15 up to December 28, but was given no work; nor was he told not to come back, or that he was no longer in the company's employ. Although not actually working he remained as much of an employee as he had been during the first half of the month; and his employment for that period is admitted. On December 28, 1932 he was taken sick and died on January 4, 1933. When he died the company owed him wages of $7.84 after deducting seventy-five cents for his insurance. This $7.84 his wife got by surrendering his brass check.

His death, of course, fixed his status, and the plain-

tiff's right of recovery depends on his rights at that time. Anything his employer might do thereafter would have no effect on his rights as they existed when he died.

It appears that one Elliott, shop accountant for the employer, seeing that Ozanich had earned no wages during the last two weeks of December, 1932—the employer paid wages semi-monthly—sent in word to the insurance company defendant that Ozanich's employment had terminated on December 15, 1932. It does not appear from the testimony when this notice was sent, or when it was received, if at all, by the insurance company. The evidence is barren on that subject. It is clear from Elliott's testimony that it was not sent until after the end of December, for his reason for believing that Ozanich was no longer employed, was that he had not worked the last two weeks of December. There is nothing in the record to show that the notice was sent prior to Ozanich's death.

It was not shown that Elliott took this action by direction of any superior; or that he had authority to terminate any employee's employment. No one in authority had notified him of Ozanich's discharge or of the termination of his employment. Elliott said he *considered* Ozanich's employment ended, because he drew no pay for two weeks, which he thought was equivalent to a 'lay-off.' But the policy itself provides that a 'lay-off' for less than three months shall not be deemed a termination of employment within the meaning of the policy. The conclusion that Ozanich had been dropped from the rolls was, apparently, Elliott's own idea. There is no evidence that he received any orders from the company's officers to that effect. Elliott testified to his construction of the policy—what he *considered* was the result of Ozanich's failure to get work for two weeks; not to the orders of the company on that point. No instructions to that effect were shown to have been

given him. The policy does not bear out his construction. The plaintiff is not concluded by his erroneous interpretation: Szczygielski v. Travelers' Ins. Co., 114 Pa. Superior. Ct. 352, 174 A. 662. If his testimony be considered as a statement of the 'practice' of the company, it was in the same category as the evidence of plaintiff's witnesses and was for the jury.

Henry Prinz, the foreman, did not testify that Ozanich was discharged or his employment terminated on December 15, 1932; or even that he was laid off on that day. He testified in answer to a question by defendant's attorney: "Q. What happened at that time [December 14, 1932] in regard to the question as to whether or not men were laid off from work? A. Well, on that particular day I just told, like the rest of the men, to come around, and I says 'see if you have any work'; if we have work we give them work, if we have no work they have to go home; we couldn't tell a man a definite statement he should come to work because we didn't know when we would be working ourselves."

The "register" of the insurance company was not produced at the trial showing when Ozanich's employment was terminated. Nor was the copy furnished by the insurance company to the employer offered in evidence. No one testified for the defendant that Elliott's notice was received by it, or when it was received.

If Ozanich was an employee within the meaning of the policy, on January 4, 1933, when he died, and there was evidence to support that view, nothing that Elliott may have done thereafter from a mistaken notion as to the construction of the policy could affect the plaintiff's rights.

The premium on Ozanich's insurance was paid for the month of December, 1932. If he died within the grace period of thirty-one days, following January 1, 1933, his beneficiary would still be entitled to be paid. The insurance company did not prove up to what date

his insurance was paid by his employer. In any event it came within the thirty-one day grace period allowed for its payment and can be collected from the employer if it has not already been done. The employer had in its hands more than sufficient of Ozanich's money to pay his insurance.

This case is not, in its facts, like any of the cases relied on by the appellee.[1] In all of them there was evidence of a termination of the employee's employment long before his death and no satisfactory evidence of his reemployment and reinsurance.

Here we have unquestioned admission by the defendant company that Ozanich was employed and worked as late as December 14, 1932. We have evidence given by his fellow workmen—corroborated by defendant's witness, the foreman—of the practice used by the employer in distributing its work among its employees, under which there was ample evidence for the jury to find that he remained in the employ of his employer up to the day of his death. There is no proof of his discharge, no evidence of any notice being given him that his employment had ceased or was terminated—at most nothing but a temporary 'lay-off' for two weeks,—and notice of this was not even shown—and a lay-off less than three months long by the very terms of the policy did not constitute a termination of employment. The policy does not bear the construction or interpretation of Elliott, that Ozanich would have to have been reinstated as an insured employee if he had been assigned work after December 31. The policy does not so provide. If Elliott sent in to the defendant insurance company notice of Ozanich's leaving Pressed Steel Car

[1] Duvall v. Met. Life Ins. Co., 136 Atl. 400 (N. H.); Nelson v. Aetna Life Ins. Co., 115 Pa. Superior Ct. 15, 174 A. 624; Aetna Life Ins. Co. v. Lembright, 166 N. E. 586 (Ohio); Kowalski v. Aetna Life Ins. Co., 165 N. E. 476 (Mass.); Magee v. Equitable Life Assur. Soc., 244 N. W. 518 (N. D.); Steffen v. Equitable Life Assur. Soc., 64 S. W. (2) 302 (Mo.)

Company's employ—and there is no definite proof in the case when he did this, or that it was ever received by the defendant—it was done after this plaintiff's rights had accrued under the policy and they could not be affected by his improper and incorrect interpretation of the policy and of her rights under it.

No action by Elliott or the employer, after Ozanich's death, which was not warranted by a correct construction of the policy, could have any effect on the plaintiff's rights.

We are of opinion that there was ample evidence to support a finding by the jury that Ozanich was an employee of the Pressed Steel Car Company, within the meaning of the policy on the day of his death, January 4, 1933; that admittedly he was in their employ on December 14, 1932; and was not thereafter discharged; and that the action of Elliott in notifying the insurance company after his death that his employment had ceased on December 15, 1932, was not based on the facts and could not affect the plaintiff's rights as beneficiary under the policy.

The assignment of error is sustained. The judgment is reversed and is now entered for the plaintiff on the verdict.

SUPPLEMENTAL OPINION BY KELLER, P. J., September 10, 1935:

The petition of the defendant for a reargument is refused.

Our attention has been called to an error in the opinion which we are glad to correct. We said that "The policy contract calls for payment of monthly premiums in advance, based on the number of employees insured at the time, their ages, etc." The policy calls for payment of the first monthly premium in advance, and thereafter, as the premiums become

due, on the *last* day of each month,[1] subject to monthly premium adjustments. It does not affect our decision. Under it, the premium for December, 1932, was not due until December 31, 1932, and Ozanich's death occurred within the thirty-one day grace period thereafter.

We did not say, and had no thought of intimating, that the clause in the policy and certificate entitling the insured employee on the termination of his employment, to have issued to him by the insurance company, on application made within thirty-one days after such termination, without evidence of insurability, a policy of life insurance, etc., contemplated any notice by the *insurance company* to the employee of any action on the part of the employer terminating his employment. We think the meaning of the opinion is clear that the clause above referred to contemplates that an employer terminating the employment of an employee, by discharge, shall do so in such a way that the employee has notice or knowledge that his employment is terminated.

Nor did we intend to leave the impression that the thirty-one day grace period in payment of premiums has any application whatever to an employee who has been discharged and is no longer in the employ of the employer. It does apply to and protect the employee who dies, while in the employ of his employer, before the thirty-one day grace period has expired. As the policy insures nobody but employees, the thirty-one day grace provision must be for their ultimate benefit.

Our decision was based on the finding of the jury, supported by competent evidence, that Ozanich had not been discharged from his employment at the time of his death and was, therefore, entitled to protection under the policy and certificate of insurance.

---

[1]See, however, Act of May 17, 1921, P. L. 682, Art. IV, sec. 410, 40 PS 510.