## Squire, Appellant, *v.* Merchants' Warehouse Company.

Argued December 15, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Frederick H. Spotts,* with him *Pepper, Bodine, Stokes & Schoch,* for appellant.

*Robert G. Erskine,* for appellee.

OPINION BY BALDRIGE, J., January 27, 1938:

The liquidator of The Union Trust Company, of Cleveland, Ohio, brought this action to recover the value of certain bags of peas that it caused to be stored with defendant, Merchants' Warehouse Company. The peas were sold by defendant, who failed to turn over the proceeds to the plaintiff. The case was tried, without a jury, before CRANE, J., of the municipal court, who found for defendant. Plaintiff's motions for judgment n. o. v. and for a new trial were dismissed in an opinion written by the trial judge, concurred in by ROSEN, J. A dissenting opinion was filed by GLASS, J.

All the paragraphs of plaintiff's statement were admitted in evidence. Objection was made, however, to the admission of the letter referred to in the tenth paragraph, on the ground that it was irrelevant and a self-serving declaration. Defendant offered no evidence.

The material facts may be summarized, as follows:

On or about April 25, 1931, one C. B. Pyle, of Cleveland, drew a draft for $1,674.60 upon the E. W. Mills Company, of Philadelphia, payable to the order of The Union Trust Company, of Cleveland, which represented the purchase price of the shipment of peas from Pyle to the Mills company. On April 27, 1931, The Union Trust Company discounted the draft for the drawer, and credited the proceeds to his account. Attached to the draft when discounted was a negotiable bill of lading endorsed to the order of The Union Trust Company. The trust company forwarded the draft, with the bill of lading attached, to The Philadelphia National Bank for collection. Upon receipt thereof, the bank presented the draft to the drawee, the Mills company, who paid $473.52 on account, but refused thereafter to make any further payments. The Philadelphia National Bank, after the dishonoring of the draft on May 28, 1931, surrendered the

bill of lading to the railroad company under authority of the trust company, obtained possession of the peas, and stored them in the warehouse of defendant, who thereupon issued its non-negotiable warehouse receipt, setting forth that 400 sacks of peas were stored for account of The Philadelphia National Bank, and that they were "subject to delivery on written authority of above, without the return of this Receipt."

Nothing further was done until February 19, 1932, when the bank received a letter from the trust company, directing it to "instruct the warehouse company to make delivery of the peas covered by this warehouse receipt to, *or upon the order of, C. B. Pyle,* without payment." (Italics supplied). In pursuance of these instructions, the bank, on February 23, 1932, wrote to the defendant a letter, wherein it stated: "We are today requested to return to you this receipt with instructions to you to make delivery of the Peas to or upon the order of C. B. Pyle, the shipper." The defendant, in acknowledging receipt of that letter, wrote the bank: "We will be glad indeed to comply with your request and transfer title to order of C. B. Pyle, the shipper." A copy of this letter was sent to Pyle, who received it February 25th and immediately wrote the defendant, as follows:

"We are just in receipt of the copy of your letter to The Philadelphia National Bank regarding warehouse receipt No. 5757 covering 400 bags Whole Green Peas. These peas are the property of the Union Trust Company of this city and title is not to be transferred to us as you state. We are going to try and dispose of this lot for the account of the bank, and will send you shipping or release orders until they are disposed of from time to time.

"The Union Trust Company simply wants it understood that you have authority to honor our orders against this stock for shipping or delivery purposes. We are writing you in order that you will know the intention of

the bank in delivering to you the above numbered certificate.

"Very truly yours,

"S/ C. B. Pyle."

Pyle testified that shortly after this letter was written he sent to the warehouse company two orders disposing of 12 bags of the peas, which it honored, and remitted to him the proceeds of the sales, and he, in turn, paid the trust company the total amount he received. Subsequently, the defendant, without any order from plaintiff or Pyle, sold the remaining 388 bags of peas, and has not accounted for the amount realized therefrom. Suit was thereupon brought to recover a balance of $1,492.91, alleged to be due, with interest.

The position taken by the majority of the court below was that the order of the bank to the defendant transferred title to the peas to Pyle, and that, therefore, "defendant as warehouseman had the right to sell the peas and appropriate the proceeds of such sale in liquidation of any indebtedness due it by Pyle." We think the action of the court below was not warranted under the facts we have outlined. Admittedly, prior to February 19, 1932, title to the peas was in the trust company, and they were delivered to the defendant to be held by it "for account of The Philadelphia National Bank," its agent.

The meaning of the instructions given when the nonnegotiable receipt was delivered to defendant, viz: "to make delivery of the peas . . . . . . to, or upon the order of, C. B. Pyle," is the main dispute in this case. That language cannot reasonably be construed to mean that the title to the peas was transferred to Pyle, individually, giving him absolute ownership thereof. If that had been the purpose, no doubt apt language would have been employed—such as, "We hereby assign, transfer, and set over unto C. B. Pyle all our right, title, and interest,"— or words of similar import. Defendant is a public warehouseman, which has been defined as "one who receives and stores goods as a business for a compensation or

profit": *National Union Bank of Reading v. Shearer*, 225 Pa. 470, 485, 74 A. 351. The relationship of the depositor and the defendant was simply that of bailor and bailee, with title to the peas in the former and not in the warehouseman. It seems clear that the intention of the parties, in using that language, was that the trust company was not to part with its ownership of the peas, but that Pyle was the medium only through which the trust company or the bank, its agent, was acting. Defendant's statement in its letter to the bank, "We will be glad indeed to comply with your request and transfer title to order of C. B. Pyle, the shipper," did not, and could not, change the instructions it had received, or in anywise create an ownership of the peas in the warehouse company. The defendant, a warehouseman, without definite instructions, had no authority to take title, or to give title to anyone, or to apply the proceeds to Pyle's indebtedness. Long before the defendant sold the peas, it had notice that Pyle, as shown by his letter of February 25, 1932, was only the agent of the plaintiff, from whom it was authorized to accept orders for delivery of the peas. That letter, referred to and made part of paragraph 10 of plaintiff's statement, although objected to, was received in evidence, and was not stricken out. Judge CRANE did not hold this letter inadmissible until he filed his opinion.

We think the letter was clearly admissible to show Pyle's agency and defendant's knowledge thereof several months before it attempted to appropriate the proceeds of the sale of the peas. As Judge GLASS pointed out in his dissenting opinion, if the trust company had written the letter advising the defendant of its ownership of the peas, it unquestionably would have been admissible. It follows that a letter written in its behalf by its authorized agent was likewise admissible. It is well settled that an agent himself may testify to the fact of his agency and extent of his authority but his agency may not be

shown by proof of his declarations to others: *Bunting v. Goldstein et al.,* 283 Pa. 356, 129 A. 99; *Isaac et al. v. Donegal & Conoy Mut. Fire Ins. Co.,* 301 Pa. 351, 152 A. 95; *Vahlsing v. H. Rothstein & Sons,* 107 Pa. Superior Ct. 281, 163 A. 350; *Barrilo et al. v. Frank et al. v. Donegal & Conoy Mut. Fire Ins. Co.,* 301 Pa.

The defendant made no claim or attempt to set off against Pyle's indebtedness the proceeds of the sale of peas until more than six months after it had received notice of plaintiff's ownership of the peas. It could not thereafter set off its claim against Pyle as agent of the principal. "Unless otherwise agreed, the liability of the other party to a disclosed or partially disclosed principal upon a contract made by an agent is not affected by any rights or liabilities then existing between the other party and the agent": Restatement, Agency, §299; *Canfield v. Nagle,* 19 Pa. Superior Ct. 210; *Gellatly Fruit Co. v. Rothstein,* 83 Pa. Superior Ct. 55. The defendant's unauthorized disposition of the proceeds of the sale of the peas made it liable to the plaintiff: 67 C. J. p. 540, §177.

There is a vague averment in the tenth paragraph of the affidavit of defense that defendant had a lien upon the 388 bags of peas for the amount due it by Pyle; but there was no evidence that it was entitled to the entire net proceeds under a warehouseman's lien as provided for in sections 27 and 28 of the Act of March 11, 1909, P. L. 19 (6 PS §§23, 24). As previously stated, defendant presented no evidence and rested on its points for charge, which were affirmed by the trial judge.

In no event was the court justified, after it had admitted the disputed letter of Pyle, even though objected to, in subsequently eliminating it. "The record *at the close of the trial* determines the right of the court to enter judgment non obstante veredicto under the Act of April 22, 1905, P. L. 286 :" *Cozanich v. Metro. Life Ins. Co.,* 119 Pa. Superior Ct. 52, 55, 180 A. 67. The usual remedy for wrongfully excluding evidence which is material is a

new trial. In this case, however, under the admitted facts, the plaintiff is entitled to recover. It would be but a vain thing and a waste of time to return the case for another trial.

We are of the opinion that the plaintiff established title to the peas; that the sale thereof by the defendant was unauthorized. Therefore, plaintiff's motion for judgment n. o. v. should have been granted.

Judgment of the learned court below is reversed, and is now entered for plaintiff for the amount of his claim.