Battle, Admrx., *v.* Prudential Insurance Company of America, Appellant.

526

Argued March 2, 1942.

Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*A. A. Vosburg,* with him *A. Floyd Vosburg,* of *Vosburg & Vosburg,* for appellant.

*John W. Bour,* with him *William P. Farrell, Thomas A. Garvey* and *Thomas P. Hevers,* for appellee.

OPINION BY KELLER, P. J., April 22, 1942:

This was an action of assumpsit by the administratrix of the insured on two identical policies of industrial life insurance, each in the amount of $500, dated February 16, 1931, and calling for a weekly premium of 34 cents. The insurance was payable to the executors or administrators of the insured, unless the company availed itself of the 'Facility of Payment' clause, which was not done in this instance.

Premiums were not paid on and after July 23, 1934. Under the heading, Non-forfeiture Provisions, in each policy, appeared the following: "If this policy lapse

for non-payment of premium after premiums have been duly paid for three full years or more, the insured, without any action upon his or her part, will become entitled to non-participating Extended Insurance for the respective term specified in the following table. The amount of insurance payable if death occur within said term shall be the same amount as that which would have been payable if this policy had been continued in force, except as to dividend additions subsequent to the date of lapse." ......

"If there be any indebtedness under this policy, ...... the term of the Extended Insurance ...... will be reduced to such term ...... as the net single premium value of the ...... provision reduced by such indebtedness shall provide according to the mortality table hereinafter specified."

The table of Extended Insurance for policies on which payment of premiums had been made for three, four and five years, respectively, was as follows:

| "Extended Insurance | 3 yrs. | | 4 yrs. | | 5 yrs. | |
|---|---|---|---|---|---|---|
| | yrs. | wks. | yrs. | wks. | yrs. | wks. |
| | 1 | 46 | 2 | 50 | 4 | 12 |

"The Extended Insurance period dates from the date to which premiums have been paid and is the same for any amount of weekly premium."

"The basis of the non-forfeiture values is the net reserve according to the Standard Industrial Mortality Table with three and one-half per cent interest per annum ...... In computing values from the foregoing tables, due allowance will be made for each completed quarter of a year's premiums paid over and above the full number of years there indicated."

The insured died July 3, 1936.

The plaintiff, in her statement of claim, averred, inter alia, "4. Said Leo Carden [the insured] in his lifetime performed all things by him to be performed according

to the terms of said policies and said policies were in full force and effect on date of death."

To this the defendant in its affidavit of defense replied: "4th: The averments of the fourth paragraph of the plaintiff's statement are expressly denied. The insured did not perform all things by him to be performed on his part, and the policies in suit were not in force and effect at the time of his death. Premiums were not paid on said policies to keep the same in force, and on July 23, 1934, each was lapsed for the nonpayment of premiums, and the insured was so notified. The premiums due on July 23, 1934, were not paid; and under the 'extended insurance' feature of the insurance contracts, the policies were not in effect after April 13, 1936. The insured died on July 3, 1936, at which time neither of the [policies] in suit was in force and effect."

By agreement of the parties the case was tried before a judge, without a jury, under the Act of April 22, 1874, P. L. 109.

When the case came on for trial, the plaintiff offered in evidence the original policies, and certain averments in the plaintiff's statement, which were not denied in the affidavit of defense, establishing the issuance of the policies, the death of the insured and the grant of letters of administration to the plaintiff. No question was raised by the defendant as to the proofs of death furnished it. For the restricted purpose of showing an admission by the defendant that the premiums on the policies had been paid up to July 23, 1934, the plaintiff also offered a portion of the fourth paragraph of the affidavit of defense, to-wit, said paragraph as above recited, down to and including the sentence, "The premiums due on July 23, 1934 were not paid." This portion was admitted over the objection of the defendant. It was admissible under our rulings in *Toner v. Cain*, 98 Pa. Superior Ct. 477, 479; *Crew Levick Co. v. Phila. Inv. B. & L. Assn.*, 117 Pa. Superior Ct. 397, 403, 177 A. 498; *Yulsman v. Levy*, 101 Pa. Superior Ct. 71. The

case is not governed by *Roseberry v. Home Life Ins. Co.,* 120 Pa. Superior Ct. 450, 183 A. 121, relied on by appellant. The plaintiff in that case could have proved that the premiums had been paid up to March 13, 1933, by offering the averment to that effect in the *affidavit of defense;* but to recover he had to prove the payment of premiums beyond that date, which he failed to do. It is proper to note that the portion of the paragraph excluded from the affidavit in the present case did not qualify or modify the admission that the premiums had been paid up to July 23, 1934.

Plaintiff then rested, and defendant moved for a compulsory non-suit, which the trial judge refused. Notice was thus brought to the defendant's attention that the trial judge was of the opinion that the plaintiff had made out a prima facie case, and that if defendant relied for its defense on its averment that the automatic *extended insurance* under the policies expired on April 13, 1936, the burden rested on it to produce evidence in support of its position. This the defendant refused to do, and after offering in evidence two 'premium notes' signed by the insured showing that on February 5, 1934, the sum of $6.46 had been advanced as a loan on each policy, which, with interest at 4% per annum, compounded annually, existed as a lien against the policy, rested.

The trial judge filed his decision, stating his findings of fact, answers to requests for findings, etc., and conclusions of law, and holding, as to the main point involved, that the payment of premiums for three years five months and seven days—from February 16, 1931 to July 23, 1934—entitled the insured not only to the extended insurance applicable to policies on which the premiums had been paid for three years, to-wit, one year and forty-six weeks, but as premiums for a completed quarter beyond three years had also been paid, [see the abovequoted provision in the policy], to an additional period to be computed by taking one-fourth

of the difference between one year and forty-six weeks and two years and fifty weeks (the extended insurance applicable to policies on which premiums had been paid for four years) or one-fourth of one year and four weeks (56 weeks), or fourteen weeks. So that under the 'Non-forfeiture provisions' of the policy, the automatic extended insurance provision kept the insurance alive for two years and eight weeks from July 23, 1934, or until September 16, 1936, which is two months and thirteen days after the date of the insured's death.

As to the effect of the indebtedness represented by the 'premium notes', the trial judge said: "The plaintiff has submitted proof that on the face value of the policies, without any indebtedness, the extended insurance value would carry over past the date of death of the insured, [that is, to September 16, 1936, two years and eight weeks]. The policies are subject to an existing indebtedness, but the effect of such indebtedness on the extended insurance value is not proven, and since the burden of coming forward with proof of such effect is upon the defendant, the only conclusion we can draw is that on the present state of the record the existing indebtedness is without legal effect to diminish the extended term value [so as to make it expire before July 3, 1936, one year and forty-nine weeks]. Therefore the plaintiff is entitled to judgment."

Exceptions to the findings, conclusions and decisions were dismissed by the court in banc and judgment was entered for the plaintiff. The defendant appealed.

The case hinges upon the question, Who had the burden of producing evidence respecting the diminishing effect of the indebtedness existing against the policies on the automatic extended insurance term of two years and eight weeks secured to the insured under the non-forfeiture provisions of the policies?

We agree with the court below that as presented under the pleadings in this case, the burden was on the defendant.

The affidavit of defense contained no averments of any existing indebtedness on the policies, which would reduce the period of extended insurance below the two years and eight weeks, that a mathematical calculation based on the face of the policies, showed the insured would be entitled to if the premiums had been paid up to July 23, 1934. It is true that indorsements on the policies showed that on February 5, 1934, $6.46 had been advanced on each policy as a lien against the policy, but the concrete effect of this advancement on the term of the extended insurance does not appear in the policy and cannot be arrived at without recourse to tables and data outside the policy. The affidavit did not contain any averments or explanations regarding the provision in the policy above quoted, which is here italicized, viz., "If there be any indebtedness under this Policy, ...... the term of the Extended Insurance ...... will be reduced to such term ...... as the *net single premium value* of the ...... provision reduced by such indebtedness shall provide according to the mortality table hereinafter specified."

There is nothing in the policy which throws any light on this expression, and it cannot be applied without some explanation as to what it means, and how this *'net single premium value'* is arrived at. There is no basis whatever in the policy contract itself to support the statement, "Under the 'extended insurance' feature of the insurance contracts, the policies were not in effect after April 13, 1936." If there had been, and from the policies themselves it had appeared that the term of extended insurance expired on April 13, 1936, the plaintiff, without more evidence than she produced, could not recover: *Specter v. New York Life Ins. Co.*, 147 Pa. Superior Ct. 289, 24 A. 2d 94. In the present case, by a mathematical calculation based on the provisions of the policies (*Specter v. New York Life Ins. Co.*, supra) the plaintiff proved that, apart from the effect of the liens against them, the automatic provision for ex-

tended insurance kept the policies in force until September 16, 1936. The defendant contended, based upon some calculation that cannot be made without recourse to figures and tables not contained in the policies, that, by reason of these liens, the extended insurance term expired on April 13, 1936. As the calculation rested on figures and tables not contained within the policies, and was peculiarly within the knowledge of the defendant, the burden was on it to produce evidence in support of the averment: *Turner v. Peoples Industrial Life Ins. Co.,* 180 So. 435, 440 (La.); *Smith v. Unity Industrial Life Ins. Co.,* 183 So. 585, 591 (La.); *McGogney v. Mutual Life Ins. Co. of N. Y.,* 103 Fed. 2d 649, 652 (C.C.A. 3d Circuit); *Hakun v. Metropolitan Life Ins. Co.,* 120 Pa. Superior Ct. 480, 486, 182 A. 702; *Corrigan v. Home Life Ins. Co.,* 120 Pa. Superior Ct. 476, 478, 183 A. 125; *Zenner v. Goetz (Travelers Ind. Co., App.),* 324 Pa. 432, 435, 188 A. 124.

It is well settled that an existing doubt as to the construction of the different parts of a policy of insurance must be resolved in favor of the insured: *Francis v. Prudential Ins. Co.,* 243 Pa. 380, 90 A. 205; *Carter v. Metropolitan Life Ins. Co.,* 264 Pa. 505, 107 A. 847; *Krebs v. Phila. Life Ins. Co.,* 249 Pa. 330, 95 A. 91; *MacDonald v. Metropolitan Life Ins. Co.,* 304 Pa. 213, 155 A. 491; *Roeser v. National Life Ins. Co.,* 115 Pa. Superior Ct. 409, 175 A. 887; *Murray v. Prudential Ins. Co.,* 144 Pa. Superior Ct. 178, 18 A. 2d 820.

Nor can the trial court be charged with reversible error because it refused to re-open the case, after the decision of the trial judge had been filed, in order to permit the defendant to produce the testimony which it had refused to offer at the trial. The case should be regarded in this respect just as if it had been a jury trial: *Cockcroft v. Metropolitan Life Ins. Co.,* 125 Pa. Superior Ct. 293, 296, 189 A. 687. If a party, on such a trial, relying on his judgment or opinion as to the law, refuses to produce evidence within his power, he cannot, as a

matter of right, after an adverse verdict, ask for a new trial in order that at the second trial he might produce the evidence he refused to offer at the first trial. There would be no end to litigation if that were permitted. Whether a new trial should be had, in such event, is in the sound discretion of the trial court: *Jackson v. Conneautville Boro Sch. Dist.,* 280 Pa. 601, 608, 125 A. 310; *Brandis v. Empire State Life Assurance Soc.,* 315 Pa. 558, 560, 174 A. 104; *Fell v. Pitts,* 263 Pa. 314, 106 A. 574; *Queen-Favorite B. & L. Assn. v. Burstein,* 310 Pa. 219, 224, 165 A. 13; *Oakley v. Allegheny County,* 128 Pa. Superior Ct. 8, 15, 193 A. 316; *Bruner v. Kendall,* 148 Pa. Superior Ct. 192, 24 A. 2d 924.

The assignments of error are overruled and the judgment is affirmed.