## Cipa, Appellant, v. Metropolitan Life Insurance Company, Appellant.

Argued April 25, 1944. Before KELLER, P. J., BALD-RIGE, HIRT, KENWORTHEY and RENO, JJ. (RHODES and JAMES, JJ., absent).

*D. C. Jennings,* for defendant appellant No. 182, appellee No. 293.

*Hymen Schlesinger,* of *Schlesinger & Schlesinger,* for plaintiff appellee No. 182, appellant No. 203.

OPINION BY RENO, J., July 15, 1944:

This is an action in assumpsit by the beneficiary in a certificate of group life insurance issued by defendant on the life of Andy Cipa, the deceased. The material facts are admitted in the pleadings.

On February 1, 1941, Andy Cipa became insured by a certificate of insurance for $2,000, issued under the provisions of the master contract previously entered into between defendant and the Jones and Laughlin Steel Corporation, Cipa's then employer. Cipa was engaged as a hammer chipper, but when Jones and Laughlin abolished hammer chipping in favor of another process, he was given a temporary lay-off on January 5, 1942. On January 7, 1942, Cipa accepted employment with the National Tube Company for whom he worked continuously until his death on February 11, 1942, after which date plaintiff collected the proceeds of a group life insurance policy carried by National Tube Company.

The master contract between defendant and Jones and Laughlin Steel Corporation contained, inter alia, the following relevant provisions:

"Section 1. Definition of the Term 'Employees': The term 'Employees', as used herein, shall be deemed to include all employees directly employed and compensated for services solely by the Employer ......

"Section 5. Discontinuance of Insurance: (a) The insurance on any Employee insured hereunder shall cease

automatically on the date of the termination of employment of such Employee. Cessation of active work by an Employee shall be deemed to constitute the termination of his employment, except as provided in the two paragraphs next following.

"As to the Life Insurance hereunder: In case of the absence of an Employee from active work on account of sickness or injury, or on account of retirement on pension by the Employer, or for not longer than three months on account of leave of absence or temporary lay-off, the employment of such Employee may, for the purposes of the Life Insurance hereunder, be deemed to continue until terminated by the Employer. The Life Insurance hereunder on such Employee shall cease on the date of such termination of employment by the Employer, as evidenced to the [defendant] Company by the Employer, whether by notification or by cessation of premium payment on account of the Life Insurance hereunder on such Employee.

"Section 8. Insuring Clause: (a) Life Insurance. Upon receipt by the Company of due notice and proof, in writing, that the death of any Employee insured hereunder for Life Insurance has occurred while in the employ of the Employer or within thirty-one days after termination of employment as defined in Section 5 hereof, provided this Policy is in force at the date of death, and upon the surrender of such Employee's Certificate, the Company shall pay, subject to the terms hereof, to the Beneficiary of record, the amount of Life Insurance, if any, in force on account of such Employee at the date of his death, or at the date of termination of employment if death occurred within thirty-one days after such termination, in accordance with Sections 4 and 7 hereof."

It was admitted that Jones and Laughlin's master policy was in effect on February 11, 1942, but defendant contends that Cipa voluntarily terminated his employ-

ment by going to work for National Tube Company on January 7, 1942, and that his beneficiary is not entitled to the proceeds of this policy since his death occurred more than thirty-one days after his re-employment.

The testimony taken at the trial, which resulted in a directed verdict for defendant, was largely immaterial. Plaintiff was not permitted, because of defendant's objection, to prove by oral evidence that Cipa's foreman had given him a letter to the employment department of Jones and Laughlin to be used in an effort to secure temporary work at the National Tube Company until he could be recalled for further employment at Jones and Laughlin. The court below refused plaintiff's motion for judgment n.o.v., but granted her motion for a new trial so that the inter-departmental letter might be offered in evidence, and to secure to the parties an opportunity to produce testimony to prove whether decedent's employment with the National Tube Company had been casual, exclusive, part-time, or full-time in character. Defendant appealed (No. 182 April Term, 1944) from the order granting a new trial, and plaintiff appealed (No. 203 April Term, 1944) from the refusal of her motion for judgment n.o.v.

The vital question in the case is whether, under the facts upon the record, Cipa's employment with Jones and Laughlin had been terminated, within the meaning of the policy, at the time of his death. At the outset it should be observed that the terms "employee" and "employment" for this purpose are to be understood in the light of the definitions in the policy, rather than in the sense generally accorded them when that legal relation, not involving insurance matters, is under consideration. It should also be noted that we are not now called upon to decide whether defendant would be liable under its policy had Cipa been actively engaged in work for both Jones and Laughlin and Na-

tional Tube Company at the time of his death, in view of the clause providing that the term " 'Employees' ...... shall be deemed to include all employees directly employed and compensated for services solely by" Jones and Laughlin. It is not disputed that Cipa was an "employee" within the terms of the policy prior to January 5, 1942, and our decision now relates merely to the narrow issue of whether he lost that status by his subsequent conduct.

As will be seen from the portions of the policy quoted above, Cipa's coverage was to cease upon the "termination of employment", but this phrase was further defined as meaning the "cessation of active work", except, so far as material here, that where an employee was absent from work for not longer than three months on a temporary lay-off, the employment might be *deemed* to continue until the employer notified defendant of the termination, either by an express notification of the change of status or by a discontinuance of premium payments. It is not claimed that defendant was notified by Jones and Laughlin that Cipa had been absolutely discharged, and the argument that Cipa was no longer an employee of Jones and Laughlin in the popular sense after he began to work elsewhere does not meet the issue, because the policy does not require the continuation of the common-law status of employer and employee. It expressly recognizes that, notwithstanding the suspension of this relationship during a temporary lay-off of not more than three months' duration, the status, for insurance purposes, may be *deemed* to continue nonetheless. The insurance company has, therefore, by its own contract, created a fictional relationship with a limited life of three months, or less at the option of the employer.

Defendant urges that the employment cannot be deemed to continue after deceased voluntarily commenced to work for the National Tube Company,

arguing that Jones and Laughlin employees may effectively invalidate their insurance under the latter company's policy by resigning their employment. The weakness in this argument is two-fold. First, the contract of insurance expressly provides that the coverage on employees temporarily laid-off continues until terminated *by the employer,* and makes no provision for any termination occasioned by the voluntary acts of temporarily laid-off employees. Second, the employee who quits his employment at a time when he has not been laid-off and when his employer is willing that he continue working falls squarely within the language of the clause which provides: "Cessation of active work *by an Employee* shall be deemed to constitute the termination of his employment ......" (Italics supplied); whereas an employee who has been laid-off has not ceased to work for his employer at *his* volition, at least not until he has been offered and has refused work by his old employer. Furthermore, adoption of defendant's interpretation of the contract would require a person who has been laid-off from his regular employment to remain idle, upon pain of forfeiting his insurance if he sought earnings during the lay-off from any other source. This manifestly unreasonable rule is to be avoided if the language of the policy lends itself, without violence, to any other reasonable construction: *MacDonald v. Metropolitan Life Ins. Co.,* 304 Pa. 213, 155 A. 491; *Reid v. Woodman of World,* 139 Pa. Superior Ct. 492, 12 A. 2d 498; *Battle v. Prudential Ins. Co.,* 148 Pa. Superior Ct. 525, 25 A. 2d 849. Defendant furnished the language of the master contract and presumably protected itself insofar as it desired. It did not expressly restrict its liability during a lay-off period by suspending protection in the event the insured accepted other employment, and this Court should not read such a clause into the contract.

It follows from what has been said, it being conceded

deceased's lay-off was temporary in nature, that it is immaterial whether Cipa's employment with National Tube Company was part-time or full-time, or whether he intended that employment to be permanent. His employment, in the sense the word is used in the policy, could be terminated only by the expiration of three months from the last day he actively worked for Jones and Laughlin; or by an earlier notice of termination given to defendant by Jones and Laughlin; or by a refusal by deceased of proffered re-employment at Jones and Laughlin's plant. Since the court below certified that it granted a new trial for the sole purpose of allowing evidence to be presented to show the character of Cipa's employment with National Tube Company, this Court has power to correct that error of law and enter such judgment as is warranted by the record: *Cusati v. Dellisanti,* 152 Pa. Superior Ct. 223, 31 A. 2d 604.

We should add that this precise factual situation has not heretofore been presented to the appellate courts. There have been cases dealing with varying aspects of clauses relating to the termination of employment (e. g. *Turley v. John Hancock Mutual Life Ins. Co.,* 110 Pa. Superior Ct. 578, 168 A. 356, affirmed in 315 Pa. 245, 173 A. 163; *Szczygielski v. Travelers' Ins. Co.,* 114 Pa. Superior Ct. 352, 174 A. 662; *Ozanich v. Metropolitan Life Ins. Co.,* 119 Pa. Superior Ct. 52, 180 A. 67; *Grove v. Equitable Life Assurance Soc.,* 336 Pa. 519, 9 A. 2d 723) and, while they throw light upon the question raised by this record, they do not altogether control it. Still, the conclusions herein announced are in harmony with, and logically follow, the basic principles of those cases. The *Ozanich* case is especially illuminating; the explanation by KELLER, P. J., of the method of operating group insurance plans is so clear and comprehensive that further elucidation is not necessary.

In No. 182, the order granting a new trial is vacated, and the appeal is dismissed; and in No. 203, the judgment is reversed and is here entered for the plaintiff for $2,000 and interest.