## Cipa *v.* Metropolitan Life Insurance Company, Appellant.

Argued March 19, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*D. C. Jennings,* for appellant.

*Sylvia Schlesinger,* with her *Harry I. Miller,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, May 21, 1945:

In this action of assumpsit on a policy of group insurance on the lives of employees of Jones & Laughlin Steel Corporation, the question to be decided is whether or not plaintiff's deceased husband who died on February 11, 1942, was at the time under the coverage of a group insurance policy executed by the defendant company.

Section 5 of the insurance contract provided as follows: "The insurance on any Employee insured hereunder shall cease automatically on the date of the termination of employment of such Employee. Cessation of active work by an Employee shall be deemed to con-

stitute the termination of his employment, except as provided in the two paragraphs next following."

Then follows, inter alia, this provision: "In case of the absence of an employee from active work . . . for not longer than three months on account of . . . temporary lay-off, the employment of such employee may, for the purposes of the life insurance hereunder, be deemed to continue until terminated by the employer. The life insurance hereunder on such employee shall cease on the date of such termination of employment by the employer, as evidenced to the (defendant) company by the employer, whether by notification or by cessation of premium payment on account of the life insurance hereunder on such employee."

That Cipa, the insured employee, was given *only* a "temporary lay-off" by his employer, on January 5, 1942, and two days later became an employee of the National Tube Company and remained as such until his death on February 11, 1942, is *conceded*. It was also *proved*, for the testimony shows that about the middle of December, 1941, the foreman of the employer said to a group, including Cipa: "We are not laying off for good, we are just laying you off for the present and we will try to put you on some place else."

Since Cipa had the status of a temporarily laid off employee between January 5 and February 11th, and since his employment was *not* "terminated by the employer" it follows that his status as an employee entitled to the protection of the group insurance contract pleaded was not disturbed. Judge RENO of the Superior Court sums up the legal situation concisely and accurately when he says in his opinion: "The argument that Cipa was no longer an employee of Jones and Laughlin in the popular sense after he began to work elsewhere does not meet the issue, because the policy does not require the continuation of the common-law status of employer and employee. It expressly recognized that, notwithstanding the suspension of this relationship dur-

ing a temporary lay-off of not more than three months' duration, the status, for insurance purposes, may be deemed to continue nonetheless. The insurance company, has, therefore, by its own contract, created a fictional relationship with a limited life of three months, or less at the option of the employer. . . . The contract of insurance expressly provides that the coverage on employees temporarily laid-off continues until termination by the employer, and makes no provision for any termination occasioned by the voluntary acts of temporarily laid-off employees. . . . An employee who has been laid-off has not ceased to work for his employer at his volition, at least not until he has been offered and has refused work by his old employer. Furthermore, adoption of defendant's interpretation of the contract would require a person who has been laid-off from his regular employment to remain idle, upon pain of forfeiting his insurance if he sought earnings during the lay-off from any other source. This manifestly unreasonable rule is to be avoided if the language of the policy lends itself, without violence, to any other reasonable construction. [Citing cases.] . . . It being conceded deceased's lay-off was temporary in nature, that it is immaterial whether Cipa's employment with National Tube Company was part-time or full-time, or whether he intended that employment to be permanent. His employment, in the sense the word is used in the policy, could be terminated only by the expiration of three months from the last day he actively worked for Jones and Laughlin; or by an earlier notice of termination given to defendant by Jones and Laughlin, or by a refusal by deceased of proffered re-employment at Jones and Laughlin's plant."

Cipa's employment was *not* terminated in any one of the only three ways it could legally be terminated in order to destroy Cipa's status as an employee subject to the benefits of the group insurance contract.

The judgment of the Superior Court is affirmed.

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

This is an action of assumpsit on a policy of group life insurance insuring the lives of employees of Jones & Laughlin Steel Corporation. Decedent, on January 5, 1942, was given a temporary lay-off. On January 7 he became an employee of National Tube Company and remained employed there until his death on February 11. Immediately upon his employment by National Tube Company he became insured under the group policy carried by that Company, which insurance was paid to plaintiff after decedent's death. The question now is whether she can also recover upon the group policy carried by Jones & Laughlin. That policy provided that cessation of active work by an employee should be deemed to constitute the termination of his employment, except that in case of his absence from active work on account of a temporary lay-off for not longer than three months his employment might, for the purposes of the life insurance, be deemed to continue until terminated by the employer. The Superior Court, in a decision (155 Pa. Superior Ct. 339, 38 A. 2d 518) which is now being affirmed by this court, held that, since Jones & Laughlin did not terminate decedent's employment after his lay-off, his employment there continued, and accordingly plaintiff was entitled to recover.

The Jones & Laughlin policy provided that "The insurance of an employee insured hereunder shall cease automatically on the date of the termination of employment of such employee." It seems to me that the error in the decision of the Superior Court consists in the apparent assumption that a termination of decedent's employment could occur only through action by the *employer*. An employee, employed at will or from week to week, can always, of course, *himself* terminate his employment, whether during the period of a lay-off or at any other time, and, if he does so terminate it, the insurance, according to the terms of the policy, would "cease

automatically". Therefore, if, for example, decedent, on January 7, had formally said to Jones & Laughlin: "I am leaving your employ and am taking a permanent job with the National Tube Company", could it possibly be held that he still remained insured under the Jones & Laughlin policy? All that the policy provided, in the clause upon which the opinion of the Superior Court is based, was that a temporary lay-off should not *in and of itself* be deemed a termination of the employment, but had to be followed by an absolute discharge in order to accomplish that result. But that provision had nothing whatever to do with a termination of the employment *by the employee*.

The only question in the case, in my opinion, is whether, in taking work at the National Tube Company, decedent was merely securing a temporary employment pending the lay-off at Jones & Laughlin, or whether he intended thereby to sever his employment with the latter entirely. In order to show that he was taking merely a temporary job plaintiff offered to prove that decedent's foreman at Jones & Laughlin had given him a letter to be used in an effort to secure work at the National Tube Company until he could be recalled for further employment at Jones & Laughlin. The trial court sustained defendant's objection to this offer and gave binding instructions for defendant but subsequently granted a new trial on the ground that it should have admitted the evidence thus rejected. This letter was pertinent to the question whether decedent was seeking only temporary employment with the National Tube Company or was permanently disassociating himself from his former employment, and the trial court, having refused its admission, was correct in therefore granting a new trial.

For the reasons stated I dissent from the affirmance of the decision of the Superior Court which reversed the order granting a new trial and entered judgment for plaintiff n. o. v.

Mr. Justice DREW concurs in this opinion.